Heath v. The Whitebreast Coal and Mining Co.

Heath v. The Whitebreast Coal & Mining Co.

1. **Master and Servant:** injury to miner: known negligence. waived and risk assumed. A miner cannot recover of his employer for an injury caused by a defect in the track or cars used in the mine, or by the want of appliances connected therewith, the condition of which he knew, or in the exercise of ordinary care should have known, at and before the time of the alleged injury, if the alleged defects were such as he ought reasonably to have foreseen might endanger his safety.

2. **Railroad in Coal Mine:** switch on grade: negligence not presumed. Proof that a switch-track in a coal mine was built upon a grade, does not of itself tend to establish negligence on the part of the proprietor of the mine in so building it, for it may not have been possible to build it otherwise; (Compare *Foley v. Chicago, R. I. & P. R'y Co.*, 64 Iowa, 651;) and an instruction in this case, based on a contrary theory, was erroneous.

3. **Verdict:** special finding contrary to evidence: new trial. Where the jury makes a special finding contrary to the evidence, upon a material and important point, a fair trial cannot be presumed, and the verdict should be set aside at the instance of the party prejudiced.

*Appeal from Lucas Circuit Court.*

Tuesday, April 21.

This is an action for a personal injury, which the plaintiff

alleges he sustained by reason of the negligence of the defendant, while the plaintiff was engaged in the service of the defendant as a driver of cars in a coal mine. There was a verdict and judgment for the plaintiff, and the defendant appeals.

*McNett & Tisdale* and *Mitchell & Penick*, for appellant.

*Stewart Bros.*, for appellee.

ROTHROCK, J.—The defendant was the owner of a coal mine in which several hundred men were engaged in mining coal. The coal was raised through a shaft about 350 feet deep. From the bottom of the shaft there was a main entry or passage-way over a mile in length, along which a railroad track was constructed for small cars, which were drawn by mules, and by which the coal was moved from side entries to the main track, and along that track to the bottom of the shaft. At a point in the main entry, about 375 feet from the shaft, a side track was constructed, which was from 60 to 70 feet in length, with both ends connected with the main track. The coal was moved up from the side entries, where it was moved onto the main track, and along the main track to the double track made by said side track; and the drivers unhitched from the loaded cars, and other drivers with other mules hitched to them, and drove them into the bottom of the shaft, and returned with empty cars, and the first named drivers took the empty cars from the side track back to be loaded at the rooms in the side entries. The grades were such that but one car load was taken up to the switch at one drive, but from there into the bottom of the shaft two or more cars were taken. In approaching the switch with a loaded car, there was a considerable up grade for some distance, and this grade continued to a point some 30 or 40 feet past the intersection of the side track, and from that point the track was level to the other end of the switch, so that cars would stand on the track without block or brake to hold them in position.

There were grades.at other places in the mines, and all these grades in the railroad track existed by reason of the fact that the coal that had been removed from the mine did not lie level, but dipped and undulated.

The plaintiff entered the service of defendant on the fourth day of September, 1882. On the next day he commenced driving cars from the side entries up to the place where the change was made at the double track in the main entry. He drove from that until the morning of the ninth of September, and while returning with two empty cars he was injured by two loaded cars, which ran down the grade, where they had been hauled and left by another driver, and struck the cars which plaintiff was driving. There were some four or five other drivers engaged with plaintiff in driving from the side entries up to the point where the change was made. The plaintiff claimed that his injury was caused by the negligence of the defendant, and that such negligence consisted (1) in constructing said double track on a grade, whereby the cars left thereon were liable to escape and run down the main track and collide with other cars on the track; (2) in not providing the said cars or track with any block, safety spring-brake, trail, or any other appliance to prevent cars from running or escaping down the said grade; (3) in failing to keep a person at said side track to prevent the escape of cars therefrom. The defendant, by its answer, denied all negligence on its part, and averred that the plaintiff knew, or by the exercise of reasonable diligence might have known, of all the alleged negligence of which he complains, and yet he remained in defendant's service without objection or protest, and that the injury was caused by the negligence of a co-employe in the same general service.

The plaintiff was an experienced miner. He had been employed as driver in coal mines for five years before entering the service of defendant. He admits, in his testimony as a witness, that he knew before the accident that there was no brake, block or other appliance used by the drivers to pre-

vent the escape of the cars.   Whether he admitted this or not, the fact was that for four days he drove from 40 to 60 loaded cars each day to the switch, and left them there, to be taken to the foot of the shaft, and he used no means by blocking or otherwise to retain them in place.   But he claims that he did not know that the track was laid on an up grade at the point where the loaded cars were left.

The court properly instructed the jury that the plaintiff could not recover for any injury caused by any defect in the track or cars, or want of appliances connected therewith, the condition of which he knew, or in the *exercise of ordinary care should have known*, at and before the time of the alleged injury, if the alleged defects were such as plaintiff ought reasonably to have foreseen might endanger his safety.   We are strongly inclined to think that, taking into account the plaint-iff's experience as a miner and driver of such cars, he should be held to be charged with a knowledge of every defect of which he complains.   But, as the cause must be reversed upon two other grounds which admit of no doubt, we need not pass upon this question.

1. MASTER and servant: injury to miner: known negligence waived and risk assumed.

II.   It is charged in the petition that the track was negligently constructed, because it was laid upon a grade at the point where the loaded cars were required to be left.   The burden of proof was on the plaintiff to prove the alleged negligence.   There is no evidence tending to prove that the track was improperly constructed on a grade.   The fact that it was laid on a grade does not tend to prove that it could properly have been laid upon a level.   It was not incumbent upon the defendant to show that it was without fault in constructing the railway track; and yet the court instructed the jury as to this question the same as though there was evidence in the case proper to be submitted to the jury applicable thereto. See *Foley v. Railroad Co.*, 64 Iowa, 651.

2. RAILROAD in coal mine: switch on grade: negligence not presumed.

III.   The following interrogatory was submitted by the

court to the jury, at the instance of the defendant: "Did the plaintiff think or believe, before his injury, that there was a safety-spring or safety-block on the track where the loaded cars were left?" The jury answered the interrogatory as follows: "*Answer.* We cannot say positively whether he did or not." The defendant objected to the answer, and the jury were directed to retire and make further answer. After an absence, the jury returned into court and answered the interrogatory in the affirmative. The jury, therefore, found as a fact that the plaintiff thought and believed, before the injury, that there was a safety-spring or safety-block on the track where the loaded cars were left. There was no evidence in the case to support this finding, and it is directly disproved by the plaintiff in his own testimony as a witness on the trial. He was asked this question: "Will you state to the jury that you thought there was a spring there; one of those spring blocks?" *Answer.* "No, sir. I can't say that I thought there was a spring block there."

<span style="margin-left:2em">3. VERDICT:</span> special find-ing contrary to evidence: new trial.

We are unable to determine whether the jury believed that it was necessary to make this finding in order to sustain a verdict against the defendant. And it is immaterial what they believed the effect of it would be. It was surely an important inquiry in the case. If the plaintiff believed and had reason to believe that there was a spring or spring block that held the cars in place, of course he could not be charged with knowledge that there was no such appliance. The fact that plaintiff believed that there was no such appliance to hold the cars in place did not necessarily preclude a recovery. But it was an important fact in the case, and whether the jury would have returned a verdict for the defendant if they had found the fact according to the evidence we have no means of determining. It shows, however, that the defendant did not have a fair trial, and we think the motion for a new trial should have been sustained upon this ground. *Jef-*

*frey v. Railroad Co.*, 51 Iowa, 439; *Baldwin v. Railroad Co.*, 63 Id., 210.

For the errors above pointed out, the judgment of the circuit court will be

REVERSED.