SAVANNAH L. WATSON, Respondent, v. THE KANSAS & TEXAS COAL COMPANY, Appellant.

Kansas Court of Appeals, January 16, 1893.

1. **Master and Servant:** ASSUMPTION OF RISK. If a servant, capable of contracting, with notice of the risk undertakes a hazardous employment, the master incurs no liability for injuries received therefrom.

2. ————: ————: DEFECTIVE MACHINERY: LATENT AND PATENT. If the servant knows the machinery or implements he uses are defective and continues to use it, he assumes the risk, but he is not required to search for latent defects, but may assume the machinery sufficient; however, he must observe patent defects, and opportunity to know defects is counted to him as knowledge thereof.

3. ————: ————: KNOWLEDGE OF DANGER. A servant does not assume the risk unless he knows not only the condition of things, but also the danger that exists in such condition; but, if the danger is obvious, the condition need only be shown.

4. ————: ————: ————. An experienced miner of mature years is presumed to know what common observation teaches, *e. g.*, the operation of gravitation, the effect of blasting on columns, stubs and roof of a mine, and the danger of a loosened rock in the roof; and where the danger is as well known to the servant as to the master the former assumes the risk.

*Appeal from the Macon Circuit Court.*—HON. ANDREW ELLISON, Judge. '

REVERSED.

*Lee, McKeighan, Ellis & Priest,* for appellant.

(1) The demurrers to the evidence should have been sustained. If the servant has the same knowledge of the risk that an inspection would reveal to the master's inquiry, and continues at his work without complaint, he cannot recover if hurt. *Hayden v. Mfg. Co.,* 29 Conn. 548; *Ballon v. Railroad,* 54 Wis. 259; *Porter v. Railroad,* 71 Mo.; *Anderson v. Clark,* 29 N. E. Rep. 589; *Heath v. Coal Co.,* 65 Iowa, 737, and authorities *supra.* (2) The deceased knew of the condition of the rock, continued to work without complaint, and, therefore, assumed the risk of injury from it. *Anderson v. Clark,* 29 N. E. Rep. 589; *Aldridge v. Glass Co.,* 78 Mo. 559; *Oleson v. McMullen,* 34 Minn. 94; *Dist. of Columbia v. McElligott,* 117 U. S. 621.

*W. H. Sears* and *Ben Eli Guthrie,* for respondent.

SMITH, P. J.—Action by plaintiff to recover for the death of her husband occurring while he was employed in the defendant's coal mines at Ardmore in Macon county. A stone from the roof of the mine fell

upon him and crushed him to death. Plaintiff complains that the defendant knew that the roof was unsafe at the particular place from which the rock fell, and negligently failed to secure it against falling, or was negligent in not knowing of its insecure condition. The defendant answers disclaiming any fault on its part and averring that the accident was a risk incident to the nature of the service, and that the death of the deceased was occasioned by his own and the negligence of his fellow employes.

The uncontradicted evidence tends to establish these facts: That the deceased was an experienced coal miner and had been engaged for some time in the mines where he met his death. The work at which he was engaged at the time of his death required skill and was hazardous, so much so that only expert miners would undertake it for an increased compensation. The strata of coal at these mines outcrop on the surface, and the main entry is driven in on a slant following the lay of the vein of coal. The exploration in the virgin bed of coal thus made is called the "main entry," off from which is driven the other ways called "cross entries." These cross entries are driven back in the coal bed at right angles with the main entry, and from either side of it are formed by the excavation of the coal what are called "rooms." Between each of these rooms are left pillars to support the roof, until the whole field has been by this process of excavation stripped of coal. When this has been accomplished the pillars are drawn, and the roof allowed to cave in, and that part of the workings abandoned.

A cross entry had been driven in at the mine where the deceased was at work, and upon it on either side rooms had been made by the excavation of the coal, and the pillars at this cross entry between the rooms were ready to be drawn. The length of the cross

entry was something over three hundred feet. The rooms are about thirty feet from center to center. The deceased and his partner had undertaken to draw the pillars and stubs, the stubs being that part of the pillar which adjoins the entry. They were to be paid fifty cents per ton for doing so. That work, although more hazardous, was more profitable, both on account of the extra compensation and the ease with which the coal was gotten out. Larger results were obtained with less powder. They had drawn some pillars between the rooms at the remotest end of the entry, and were proceeding to draw a stub between the other rooms when the accident occurred. They had been at this work some days. A short time before the accident, a shot or blast had been made, and at the time of the accident Fox was drilling a hole, in which to put another blast. Their tools were laid a short distance from them in the entry, and Watson was standing near by his tools, when a stone, weighing about a ton and a half, in a loaf shape, the convex part at the top fell upon him. That part of the stone which was exposed in the roof was flat; the concealed part was oval, coming out to a feather edge.

Some days before the accident, both Fox and Watson had noticed a seam from which the rock broke away, and had surmised that it was scaling down; sounded it and found that it sounded like a drum, but concluded that it would remain safe until after they had gotten through with the work of drawing pillars and stubs. It was shown without contradiction that it was the duty of miners, in doing this kind of work, to protect themselves against the caving in of the roof, by using props which were furnished them at the mouth of the entry.

The only witness for the plaintiff, Mr. Eaton, testified that the roof of the entry in which the accident

happened was sound and solid with the exception of one place where Watson was killed, and that to the best of his knowledge the roof at this point had been bad about three months, and that about two weeks before the accident he saw a man wedge the rock, whom he recognized to be a day hand, employed by the defendant company, but, as the rock did not come down, he knocked out his wedges and let it hang, without being propped or cross-barred. All of the men who were employed by the day, and whose duty it was to look to the security of the entries, were called as witnesses and each testified that he made no effort to wedge the rock, take it down, or prop it up; that they knew nothing of the dangerous condition of this stone.

At the conclusion of the whole case the defendant asked an instruction in the nature of a demurrer to the evidence which was overruled. Plaintiff had judgment and defendant appealed. The only question thus presented by the record for our decision arises out of the action of the trial court in overruling the defendant's demurrer to the evidence.

It is a familiar principle, that, if a servant capable of contracting for himself, and with full notice of the risk he may run, undertakes a hazardous employment, no liability is incurred by the master for injuries received from these hazards. The rule has been well settled by a long and unbroken line of judicial decisions in this state to the effect that, if the defect in the machinery or implement be known to the employe, and he will still enter into the employer's service, he takes upon himself the risk incident to such defect, and cannot recover damages for the injury he may receive attributable to such defect. *Porter v. Railroad*, 71 Mo. 66, and cases there cited. On the other hand, it is equally well settled that it is not incumbent upon the employe to search for latent defects in machinery or implements

furnished him by the employer, but that without such investigation he has the right to assume that they are safe and sufficient for the purpose. *Porter v. Railroad,* 60 Mo. 161; *Lewis v. Railroad,* 59 Mo. 506; *Gibson v. Railroad,* 46 Mo. 163. If, however, the defect is patent, open to observation or such as the ordinary use of the machine, in the business the servant is engaged in, would disclose to an ordinarily observant man, operating it, before being injured, to observe the defect, his opportunity to know would be held as knowledge, whether in fact he knew of the defect or not. *Keegan v. Kavanaugh,* 62 Mo. 232; *Hulett v. Railroad,* 67 Mo. 239.

In *Aldridge v. Furnace Co.,* 78 Mo. 559, where the cause of action stated was, while plaintiff was at work by the defendant's direction in the Millsap bank at the foot of an embankment or wall of earth, four feet back from the face of which was a crevice partially separating the embankment from the body of the surrounding earth, the embankment fell upon him and injured him by reason of defendant's failure to secure it by the use of shores or props, and that plaintiff was ignorant of the crevice, and the defendant was not, etc. The ignorance of the deceased was denied by the answer. In that case it was said "If the deceased did know of the existence of the seam or crevice and the consequent danger, or if it was so patent that an ordinarily observant person whether a minor or not, would have discovered it within the time deceased was at work on the bank, then such opportunity to know it would be held as knowledge whether, in fact, he knew it or not, and in either case his employer would not be liable."

In *Heath v. Coal Co.,* 65 Iowa, 737, it was declared that the court properly instructed the jury that the plaintiff could not recover for an injury caused by a defect in the track or cars, or for want of appliances

connected therewith, the condition of which he knew at and before the time of the injury. In *District of Columbia v. McElligott*, 117 U. S. 621, it was said that, if liability might come upon defendant for negligence of its officers controlling the defendant's services, he was under an obligation to exercise due care in protecting himself from personal harm while discharging duties out of which such liability might arise. If he failed to exercise such care, if he exposed himself to dangers that were so threatening or obvious as likely to cause injury at any moment, he would be guilty of such contributory negligence as would defeat his claim for injuries received.

And the general rule is that a person cannot be said to take a risk unless he knows, not only the condition of things, but also the danger that exists in such condition. *Coombs v. Cordage Co.*, 102 Mass. 572; *Miller v. Mfg. Co.*, 150 Mass. 362. If, however, the danger is obvious, knowledge of the condition need only be shown. *Sullivan v. Mfg. Co.*, 113 Mass. 296; *Boyle v. Railroad*, 151 Mass. 102; *Foley v. Machine Works*, 149 Mass. 249. In *Anderson v. Clark*, 29 N. E. Rep. 589, it was said in the case at bar: "If any danger existed in the condition of the windlass, or of the appliances, it was an obvious danger to a person of the plaintiff's experience. The exceptions state that he was of full age, had been to sea on vessels of the same kind for many years, and was familiar with this kind of windlass and condition before entering upon the voyage. If there was any failure of duty on the part of the owner this was fully known to plaintiff at the time he made his contract, and it must be assumed that he knew the hazards he was encountering."

Applying these few plain and well-settled principles to the facts of this case, and it becomes at once quite manifest that the demurrer ought to have been

sustained. While the deceased and his partner were engaged in the work of removing the stubs and columns and thus wrecking the mine, it was their duty to secure defective or unsafe roofs for their own protection. This seems to have been the custom in such cases. The deceased saw the seams indicating a partial displacement of the stone, and tested it by striking it with a pick, the best method occurring to them as experienced miners, and concluded from such test that it would remain where it was until their work was finished. He knew the condition of the stone, and continued to work without complaint and without propping it up himself. Even if defendant knew of the condition of the stone, or might have known it by the exercise of ordinary care and prudence, the uncontroverted evidence is that deceased had the same knowledge. The latter had also the same knowledge of the risk as defendant. The deceased was a man of mature years, and was an experienced miner. He must be presumed to have had the knowledge which common observation forces on the most ordinary intellect to have known the effect and operation of the law of gravitation, and the blasting in the neighboring columns and stubs upon the existing conditions of the superincumbent roof, of which the stone which subsequently fell was a part. He must be presumed to have known that from such causes the stone was likely to break away and fall down, and that the fall must be attended with danger to anyone in its way. *Olson v. McMullen*, 24 Minn. 94; *Walsh v. Railroad*, 27 Minn. 367. Assuming as we must that the danger was as well known to the deceased as to the defendant, the former must be taken to have assumed the risk, and, therefore, he cannot hold the defendant responsible for the direful consequences.

We do not think the evidence, for the reasons just stated, warranted the court in the submission of the case to the jury. It results that the judgment must be reversed. All concur.