The Chicago, Burlington & Quincy Railroad Company v. McGraw.

1. Practice.

Generally, questions of negligence and of contributory negligence are questions of fact to be determined by the jury, but, where the facts are undisputed, it may become the duty of the court to determine such questions as matters of law.

2. Negligence—Employers' Rules.

Under the facts in this case, the railroad company is held to have been negligent in failing to adopt and promulgate more specific and definite rules for the guidance of its employés and tending to insure their safety.

3. Employer and Employé.

When an employé of a corporation is suddenly ordered into a place of danger, without opportunity for reflection or time for investigation, by one having authority over him, the company, in case the employé

is injured, will not be relieved by his obedience, unless the danger was so apparent that no reasonable man would assume the risk.

4. NEW TRIAL—MISCONDUCT OF JURY.

When the misconduct of the jury was not willful, but resulted from inadvertence, a new trial will not be granted, unless injury be shown; but where it was willful, the verdict may be set aside for this reason alone.

*Appeal from the District Court of Arapahoe County.*

ACTION for personal injuries. Verdict and judgment for plaintiff. Defendant appeals.

Messrs. WOLCOTT & VAILE and Mr. H. F. MAY, for appellant.

Messrs. OSBORN & TAYLOR, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

Appellee, Leonard McGraw, was an employé of the appellant company at the time of receiving the injury for which damages were recovered in the court below. The evidence shows that the Railroad Company, at the time and for sometime prior thereto, was using certain side tracks in the Denver yards for the repair of its cars, etc. These side tracks were six in number and were connected with the main track at both the east and west ends.

The repairs that were done upon these side tracks were designated as "light repairs or monkey-wrench work," the *modus operandi* being as follows: When cars requiring repairs were switched upon any of these tracks, they were first examined by an inspector, who indicated by chalk marks the place where repairs were needed. These inspectors were followed up by the car repairers, who did the work.

The appellee McGraw was a member of one of these gangs of car repairers, and at the time of the accident was working under the immediate supervision of one Nelson Johnson, a subforeman, who was in turn under the direction and con-

trol of one Patrick Duffy, Duffy being the foreman in charge of the general car repair work of the Railroad Company at this point. Each gang of car repairers was furnished with blue flags. These flags were for the purpose of protecting the car repairers while at work, by giving warning to those in charge of the switch engine and others that the repairers were at work, and that the car must not be moved. The evidence shows that all the employés well knew the purposes for which these blue flags were furnished; this purpose, as stated by the plaintiff while on the witness stand, being as follows: " They were protection to keep the switch engine men from coming in on us." At the time of the accident, the subforeman Johnson, with McGraw and two others, were repairing the drawhead of a car upon one of these side tracks.

The evidence shows that sometime previous to the day of the injury, one of the switchmen, in letting in a car upon the side track upon which McGraw was working at the time of the injury, put the brakes upon the car before it had passed a sufficient distance onto the side track so that other cars could be switched in upon the other side tracks and clear this car. The switch crew found it necessary to shove the car, thus left by the brakeman, further down the track, in order that the engine might enter onto another side track for the purpose of switching other cars.

At the particular instant of the accident, McGraw was holding up the drawhead, in order that another man might go under the car and put on a yoke. The foreman had just stepped out to get a washer, when the switch engine came in at the west end for the purpose of shoving the outer car further onto the side track. The grade slightly declining towards the cars between which McGraw was standing and this car, the cars bumped one against the other until the car which he was repairing was reached and moved, catching McGraw's wrist and necessitating the amputation of his hand.

As we have seen, the only protection from the switch engine afforded the employés was by the blue danger flags

furnished by the company. For some reason it was only customary to put these flags at the east end of the cars upon which the repairers were at work, and prior to the accident they were never put at the west end. Plaintiff was an old railroad man, he having been employed by different companies for five years immediately preceding the accident, although he had only worked in his position as car repairer for the defendant for seven weeks prior to the accident. He testifies that about a week or ten days before the accident, he was instructed by the foreman to put out the blue flags to protect the men while at work. He says he asked the foreman if he should put them at the west end, and that he replied, " No, we do not have to." The evidence shows that the switch engine more frequently approached these side tracks from the east than from the west, but it is undisputed that the switch engine came in from the west end at least two or three times a week, and sometimes every day.

Upon these facts, the principal questions for the jury to determine were with reference to the negligence of the respective parties, plaintiff and defendant; one of the pleas interposed by the defense being that the plaintiff, well knowing the danger had by his negligence in going between the cars to repair the same without a blue flag being placed at the west end of the cars, thereby so contributed to the injury which he received as to prevent any recovery. Generally, questions of negligence and of contributory negligence are questions of fact to be determined by the jury, but where the facts are undisputed, it frequently becomes the duty of the court to determine these questions as a matter of law. *Lord v. The Pueblo Smelting & Refining Co.*, 12 Colo. 390.

In the printed rules of the company, introduced by appellee, the only reference to the blue flag is in the following language: " Blue is a signal to be used by car inspectors." Considering the hazardous and dangerous character of the work to be performed by these car repairers, we think that reasonable diligence on the part of the company required

the adoption and promulgation of more specific and definite rules for the guidance of its employés.   It should have exercised every reasonable precaution to have insured the safety of its servants.   The evidence in this case is amply sufficient to show the negligence of the company.

Was the plaintiff guilty of contributory negligence?   The evidence shows that he was an old railroad hand; that he had worked in his present position for seven weeks prior to the accident; that the switch engine was constantly switching cars in and out upon the side tracks where he was at work.   That plaintiff fully realized his danger is apparent from the inquiry that he made of Johnson a few days prior to the accident.   The fact that Johnson told him that he did not have to put blue flags at the west end can in no way release the plaintiff from the result of his negligence.   He knew the danger that he was in.   The evidence shows that he might have avoided this danger by simply placing a blue flag at the west end of the line of cars upon which he was at work. The flags were there to be used, the plaintiff himself testifying that they had four good flags, while only two were used at the east end.

The facts in this case are almost identical with those in the case of *O'Rorke v. The Union Pacific Railway Co.*, 22 Fed. Rep. 189.   The plaintiff in that case was a car repairer. On the day of the accident, there were three cars standing on a side track and a freight train on the main track.   He was told by the conductor of the freight train that the rear car of the cars on the side track needed repairing, and that he would wait twenty minutes for him to do the work.   The car repairer went under the car to repair it, and, while there working, the engine of the freight train switched a car onto the side track, which started the other cars, moving the car under which plaintiff was working and injuring him.   It was shown in evidence that on that line of road a red flag was the proper signal to notify the engineer; that the plaintiff failed to put out such a flag, and that the engineer in moving the train did not know that there was any one under the

car. Mr. Justice Brewer, in holding that the company was not responsible, said: " Plaintiff had been for seven or eight months in the employ of the company along this line of road ; that he had done this work day after day without a flag, knowing its necessity, making no complaint, asking for no change ; and it seems to me that, after we consider this and all the circumstances of the case, it must be said that, negligent although the company was, the man assumed the risks of the danger, knowing what it was, and cannot now hold the company responsible." See also recent case of *Southern Pacific Co. v. Pool*, 160 U. S. 438.

It is contended in this case that the plaintiff was ordered into a position of danger by Johnson, and for this reason, it is said, that he cannot be charged with negligence in obeying the order of his superior. This court in a number of cases has held that where an employé is suddenly ordered into a position of danger by one having authority over him, particularly if the superior has the right to hire and discharge the men under him, the company, in case the employé is injured, will not be relieved by his obedience, unless the danger was so apparent that no reasonable man would assume the risk. *Denver, T. & G. Ry. Co. v. Simpson*, 16 Colo. 55 ; *Colo. Midland Ry. Co. v. O'Brien*, 16 Colo. 219.

The principle controlling in such cases has, however, no application to the facts as disclosed by this record. There is no pretense that the plaintiff was suddenly ordered into a position of danger, and that the injury was received by reason of his compliance with such an order. The cases in which the company has been held liable are where the urgency was such that the employé was called upon at once to obey or disobey, without opportunity for reflection or time for investigation, while the evidence in this case shows that the plaintiff, at the time of the injury, was doing that which he had been in the habit of doing during the entire time that he was at work for the defendant company as a car repairer. In addition to this, no direction was given to him by the foreman requiring the doing of anything out of the usual line of

plaintiff's employment. The plaintiff, well knowing the peril, neglected to take such precautions to avoid injury as ordinary prudence would dictate.

In this connection the conduct of the jury in this case becomes important. The trial commenced before a jury on the 18th day of November, 1892, and continued until the 22d day of November, upon which last mentioned date the cause was submitted to the jury. The main contentions at the trial were, as we have stated, with reference to the negligence of the defendant and the contributory negligence of the plaintiff. The jury were fully instructed as to the law governing these different phases of the case, and were also instructed to return answers to the following interrogatories in addition to a general verdict:

"*First.* Was there negligence on the part of the defendant, and if so, in what particular, and through what person or persons?

"*Second.* Did the plaintiff know, or ought he, in the exercise of reasonable diligence, to have known the danger at the west end of switch?"

The jury were also instructed that in case of an agreement during an adjournment of the court they might return a sealed verdict. The jury retired under the charge of a sworn officer sometime during the afternoon of the 22d day of November. At half past eight o'clock in the evening of that day they notified the officer that they had agreed upon a verdict, handing him what purported to be a sealed verdict. Thereupon they were allowed to separate and go to their homes. Upon the incoming of court the next morning, the jury were called into the box and the verdict read. It proved to be a general verdict for the plaintiff for the sum of six thousand six hundred dollars ($6,600), and an answer to the first interrogatory, to the effect that the defendant was guilty of negligence. The second interrogatory they had entirely failed to answer. Thereupon the court refused to accept such verdict, and instructed the jury that they must return an answer to the second interrogatory, as previ-

ously directed. Sometime thereafter they returned into court with the following answer to the second interrogatory, the verdict otherwise remaining the same as theretofore : "*Answer.*—From what his foreman told him, he must have thought there could be no danger."

The misconduct of the jury in this regard is assigned for error, and it is alleged that the judgment of the court below should have been set aside for this misconduct alone.   The requirement made by the court for the jury to find specially is in accordance with the following provision of our Code of Civil Procedure :

"In an action for the recovery of money only, or specific property, the jury in their discretion may render a general or special verdict.   In any case in which the jury render a general verdict, they may be required by the court, to find specially upon any particular questions of facts to be stated to them in writing, which questions of fact shall be submitted to the attorneys of the adverse party before the argument to the jury is commenced.   The special verdict or finding shall be filed with the clerk and entered upon the minutes.   Where a special finding of facts shall be inconsistent with the general verdict the former shall control the latter, and the court shall give judgment accordingly."   Section 199, Civil Code 1887.

Where the misconduct of the jury was not willful, but resulted from inadvertence, this court has held that the complaining party must show injury, otherwise the verdict would not be set aside ; but in several cases in other states, where such misconduct has been willful, verdicts have been set aside solely by reason thereof.   *May v. The People,* 8 Colo. 210 ; *Short v. West,* 30 Ind. 367 ; *Woodbury v. City of Anoka,* 54 N. W. Rep. 187 (Minn.).

In view of the issues in this case, and the attention given at the trial of those issues, we cannot view the misconduct of the jury as other than willful.   We think it apparent from this record that the jury were of the opinion that the evidence showed negligence on the part of the defendant

company, but were unwilling to find the plaintiff free from blame, although they did return a general verdict in his favor. They were advised by the court's instructions that it was their duty before separating to answer the second interrogatory with reference to the knowledge of the plaintiff of the danger at the west end of the switch, and when they handed to the bailiff in charge what purported to be a sealed verdict, but with this interrogatory unanswered, and thereby obtained permission to separate, they must have known that they were disobeying the instructions of the court and procuring their release by a subterfuge.

Even after their attention was called to the misconduct, as was done by the court at its convening the next morning, and although they were then permitted to retire for the purpose of answering the second interrogatory, they still failed to return a positive answer thereto. In view of the evidence, the answer which they did give is clearly evasive, and shows that the jury could not agree to a definite answer in favor of the plaintiff, but still sought to evade this issue. We are not prepared to say that a failure to answer every interrogatory before separation would in all cases invalidate a verdict, but where, as here, the interrogatories are only two in number, and cover the only contested issues in the case, we think, in view of the circumstances, the verdict of the jury ought not to be allowed to stand. Thompson & Merriam on Juries, sec. 335.

In view of a new trial, we will briefly allude to the fourth defense set up in the answer. In this pleading defendant alleges that it had organized a relief department among its employés for the purpose of giving pecuniary aid to those injured in its service; that the plaintiff, being a member thereof, had promised and agreed to and with the company, in consideration of certain amounts (not stated) to be paid by the said company for the maintenance of its relief department, that in case of the acceptance of benefits by him from such department for injury this should operate as a release and satisfaction of all claims for damages against the com-

pany arising from such injury. It is then averred that the plaintiff had received and accepted benefits (amounts not stated) due to him, by reason of his membership in this department, and on account of the injuries relied upon for a recovery in this action, thereby releasing the defendant from any and all claims for damages arising in any way out of such injury. To this defense the plaintiff filed a demurrer, setting forth various grounds. The court sustained the demurrer, and this ruling is assigned for error. A contract of this nature has been held void as against public policy by the circuit court of this circuit. *Miller v. The Chicago, B. & Q. Ry. Co.*, 65 Fed. Rep. 305. But such defenses, if well pleaded, have generally been held good. *Martin v. B. & O. R. R. Co.*, 41 Fed. Rep. 125; *Ringle v. Penna. R. R. Co.*, 164 Pa. 529; *Vickers v. Chicago, B. & Q. R. R. Co.*, 71 Fed. Rep. 139; *Chicago, B. & Q. R. R. Co. v. Bell*, 44 Neb. 44.

But the defense is not sufficiently presented in these pleadings to warrant a consideration of any general question as to the legality of what is known as "relief defenses." In case the defendant desires to interpose as a defense a contract with the plaintiff, showing that in consideration of his receiving certain benefits from a relief association, composed of the defendant and its employés, the nature, character and objects of such association should be set forth, as well as the amount and character of the benefits accruing to the plaintiff therefor, showing that the same have either been paid, or that there is an obligation for their discharge resting upon some organization, individual or association. Such a defense is not presented in this case, and the demurrer to the fourth defense was therefore properly sustained.

As the judgment must be reversed for the reasons given, the parties will be allowed to amend their pleadings as they may be advised, upon such reasonable terms as the district court may impose.

*Reversed.*