### HARRIS v. BALFOUR QUARRY CO.

(Filed December 18, 1902.)

1. PLEADINGS—*Proof—Variance—Negligence—Personal Injuries—Damages.*

    In an action for damages for personal injuries, there being no allegation in the complaint that the injury of the plaintiff was caused by the negligence of the defendant company acting through its vice-principal, or that he was such vice-principal, having authority to employ and discharge hands, proof of these averments is not admissible.

2. PLEADINGS—*Complaints—Master and Servant—Negligence.*

    A complaint in an action for damages for personal injuries to an employee, through the incompetency of a vice-principal, must allege that the employer had knowledge of such incompetency.

3. NEGLIGENCE—*Master and Servant—Personal Injuries—Accident—Damages.*

    The evidence in this case for damages for personal injuries is sufficient to show that the injury to plaintiff was caused by an accident.

    CLARK and DOUGLAS, J.J., dissenting.

ACTION by I. G. Harris against the Balfour Quarry Company, heard by Judge *W. B. Councill* and a jury, at May

Term, 1902, of the Superior Court of HENDERSON County. From a judgment for the plaintiff, the defendant appealed.

No counsel for the plaintiff.
*Merrick & Barnard,* for the defendant.

COOK, J. There is error in the admission of the evidence to which exceptions 1, 2, 3, 6 and 7 are taken.

The negligence complained of and alleged in the complaint is that defendant company required him to work under a boss, captain or superintendent, and that it was its duty under their contract to furnish a boss or superintendent to look after, to see to and protect the safety of its employees, and to guard them against dangers incident to the business of blasting rocks by the use of dynamite, gunpowder and other explosives, which was dangerous. And that on the occasion of plaintiff's injury, the defendant company's boss or superintendent informed plaintiff that it was safe and free from danger to drill out a hole that had been drilled, loaded with explosives, tamped and attempted to be fired, saying at the time that said explosive had been fired and that there was no danger, and ordered plaintiff and others to drill out the hole; and he, relying upon the skill, knowledge and judgment of said boss, obeyed the order, and in doing so the explosion took place, doing him great injury, which directly resulted from the gross negligence and carelessness of defendant company in having failed and neglected to furnish a man, as it agreed to do, who was skilled and experienced, and who possessed the requisite knowledge and ability to protect the plaintiff from such injury, as it should have done, and as it had contracted and agreed to do.

So, the gravamen of the alleged negligence is that the injuries were caused by the incompetency of the defendant's boss or superintendent, in directing the execution of the work

in an unsafe and dangerous manner, and in ordering the plaintiff to do a hazardous act, which was not so known to be by the boss, Burgess, on account of his incompetency, inexperience and lack of skill.

The evidence excepted to was introduced for the purpose of showing, and did show, that Burgess was a foreman and vice-principal, and that he had authority to employ and discharge hands and employees, and had control over them, but did not tend to show that he was incompetent, inexperienced and unskilled. There is no allegation in the complaint that plaintiff's injury was caused by the negligence of defendant company acting through Burgess as its vice-principal, or that he was such vice-principal having authority to employ and discharge hands and to control them in their work. So the evidence was incompetent and should have been excluded. Proof without allegation is equally as ineffective as allegation without proof; therefore, "the Court can not take notice of any proof unless there is a corresponding allegation." *McKee v. Lineberger,* 69 N. C., 239; *McLaurin v. Conly,* 90 N. C., 50. Hence, "a plaintiff is not allowed to declare on one cause of action and prove another, because if such variances are tolerated, however diligent the defendant may be, he can not so prepare his defence as to meet surprises." *Smith v. B. and L. Asso.,* 116 N. C., at page 111; *Willis v. Branch,* 94 N. C., 142; *Conly v. Railroad,* 109 N. C., 692.

The only evidence offered to show that Burgess, the boss, was incompetent or unskilled and inexperienced in his business, was that of the witness Holdert, which was erroneously admitted over defendant's objection (exceptions 4 and 5), for the reason that the witness failed to show any such special knowledge as would render him competent as an expert. But had he qualified himself as an expert, it would not have been of any advantage to plaintiff, as he had failed to allege in his complaint that defendant company knew of such in-

competency when he was hired, or kept him in its employ-
ment after acquiring such knowledge. *Hagan v. Railroad,*
106 N. C., 537 ; *Hobbs v. Railroad,* 107 N. C., 1 ; 9 L. R. A.,
838.

There are many other exceptions which are unnecessary to
be considered, as there was error not sustaining defendant's
motion to non-suit, to which exceptions 9 and 10 were taken.
The evidence of plaintiff and defendant, taken separately and
together, fails to show negligence upon the part of defendant
company.   After the two holes had been drilled, varying in
the estimate of depth from six to twelve feet, they were
charged with powder, and at the word "fire," the battery was
applied and an explosion occurred.   Whether the explosion
took place in *one* of the holes was a matter of doubt by Bur-
gess, Fowler and Edney (the two others engaged with plain-
tiff).   But after going around and looking down, talking
about it, and making an examination, Fowler and Edney
came to the conclusion that *both* holes went off, and said to
Burgess that they had gone off.   Then Burgess told them, if
they thought it had gone off, to clean it out.   Edney and Fow-
ler got ready to do so, and needed the help of plaintiff, who,
under Burgess' order, went to help them, and while cleaning
it out with the drill the explosion took place, doing the in-
jury to plaintiff.   The testimony fails to show any neglect
of duty.   The manner of cleaning out by "churning" was the
usual way, and it was not contended to have been done negli-
gently.   An examination had been made by Fowler and
Edney (the latter having been killed and the former badly
injured), who were competent and experienced workmen (as
shown by the evidence), under the supervision of Burgess,
the foreman, and, in their judgment, from what they saw
while investigating, the "hole did go off," and they undertook
to clean it out.   But, in fact, the explosion had not taken
place in this hole, but it had in the other ; they were mistaken ;

so the evidence shows an accident caused by mistake, and not by neglect of duty, for which the plaintiff can not recover.

New Trial.

CLARK, J., dissenting.    In addition to what is so well said in the dissent of Mr. Justice Douglas, it should be noted that there was strong evidence of negligence upon the testimony offered by the defendant.    Burgess, a witness for defendant, testified that he was in charge of the work, "the only boss there," that when there was any doubt about a hole having been fired, it was unloaded with a spoon, which he says was reasonably safe; that when there was no doubt of its having gone off, then the hole would be churned.    According to all the evidence, there was the gravest doubt about the hole having been fired, but instead of having it unloaded with a spoon, or boring another hole, Burgess, according to the plaintiff's evidence, ordered him to assist Edney and Fowler, who were "churning" it, which Burgess says was only an admissible process when it was *sure* that the charge had been fired. These parties "lifted the drill up pretty high and dropped it down pretty hard" in the hole, which exploded the cap in the powder charge, blowing off the plaintiff's arm, putting out an eye, and otherwise seriously injuring him, besides killing Edney and wounding Fowler.    Burgess was in sole charge of the work, the vice-principal, and it was gross negligence in him if, as was in evidence, he put the men to "churning" the hole without ascertaining whether it had been fired— especially when he had just stated that he did not think it had been fired, and there is evidence that Fowler kept saying he thought the hole had not been fired.    It was negligence, under those circumstances, if he ordered the plaintiff to assist in churning.    When called upon by Edney and Fowler, the plaintiff says he did not go to their aid till ordered to do so by Burgess.

The principles laid down in *Hogan v. R. R.,* 106 N. C., 537, and *Hobbs v. R. R.,* 107 N. C., 1; 9 L. R. A., 838; apply only where an employee is injured by the negligence of a fellow servant. At that time, prior to the passage of the Fellow Servant Law (Chap. 56, Private Laws 1897), a railroad company (as is still the case with other employers) was not responsible for the injury to an employee caused by the negligence of a fellow servant; but those cases point out there was an exception if the employer knew the fellow servant his incompetent when he was hired, or kept him in its employment after acquiring such knowledge. Those cases have no application whatever when, as in this instance, the negligence is alleged to be the negligence of a vice-principal, an *alter ego,* for his negligence is the negligence of the master. The liability of the employer for injury caused by the negligence of a fellow servant, being an exception to the general rule, it was held that the exception must be pleaded, so that the employer would be prepared to meet such allegation. But here, the sole question is whether the vice-principal (whether he was competent or incompetent) acted with due care in examining whether the charge had been fired, or whether, without due care as to such examination, he negligently ordered the plaintiff to assist in "churning" a hole, which should have been unloaded, as Burgess himself states, with a spoon, unless he was sure it had been fired. Whether there was due care, causing the horrible explosion which occurred, killing one man and severely wounding another and the plaintiff, was an issue of fact, which only a jury could determine.

As was well said by Furches, J., in *Coley v. R. R.,* 128 N. C., at page 542: "The question of prudence and the ideal prudent man are *always a matter for the jury.*" There being evidence tending to show that Burgess, the vice-principal, was not as prudent as the defendant's duty to the plaintiff re-

quired him to be, we have but one tribunal which has the legitimate power to decide the fact whether he was negligent or not. The Constitution, Art. I, Sec. 13, guarantees the right of trial by jury in criminal cases, and section 19 of the same Article, guaranteeing it in civil actions, says: "The ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable." There is no exception as to actions for negligence. There is no intimation that in such cases juries are incompetent, either to grasp the facts or to impartially determine them. In my judgment, appellate courts, sitting out of hearing and sight of the witnesses, without knowledge of their character or their bearing on the stand, and of the other incidents of the trial, can not be too careful lest under the guise of holding that there is no evidence they may not infringe upon the constitutional right guaranteed to the plaintiff and all others in similar cases. The trial Judge and the twelve jurors have been of opinion not only that there was evidence, but the jury have been unanimous that the preponderance of evidence was in favor of the plaintiff. The majority of this Court, laboring under the disadvantage of not hearing the testimony as actually delivered, may think the preponderance the other way. But when the facts are controverted, negligence—the rule of the prudent man—is always a question for the jury, not a matter of law for the Court. Montgomery, J., in *Ellerbee v. R. Co.,* 118 N. C., at page 1030; *Williams v. R. Co.,* 119 N. C., 750. It is only when there is no scintilla of evidence for the plaintiff that this Court can rightfully hold that the case should not have been submitted to a jury. An appellate court composed of five judges, and with the benefit of usually more elaborate argument, and with more time for consideration, is provided to review errors of law alleged to be committed by a single trial judge on the circuit, but the Constitution is careful to restrict our juris-

diction "to review, upon appeal, any decision of the courts below upon any matter of law or legal inference."   There is no power lodged here to review the findings of fact by a jury, upon disputed matters of fact.   The incompetency or negligence of the boss, unlike the incompetency or negligence of a fellow servant, is the incompetency or negligence of the defendant.

DOUGLAS, J., dissenting.   I can not concur in the opinion of the Court, as it seems to me to establish a dangerous innovation in pleading and a most unjust discrimination between the plaintiff and defendant.   Section 260 of The Code provides that "In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view of substantial justice between the parties." Of course the plaintiff must state the material facts constituting his cause of action so as to give the defendant reasonable notice of what it will be called upon to answer; but it would be equally useless and impracticable to set forth in detail each particular fact constituting the alleged negligence. The entire system of Code pleading is intended to effect substantial justice without regard to immaterial technicalities. This is evident from a bare citation of The Code.   Section 269 says: "No variance between the allegation in a pleading and the proof shall be deemed material, unless it *has actually misled the adverse party*, to his prejudice in maintaining his action upon the merits.   Whenever it shall be alleged that a party has been misled, that fact *shall be proved* to the satisfaction of the Court, *and in what respect he has been misled;* and thereupon the Judge may order the pleading to be amended upon such terms as shall be just."   Section 270 provides: "Where the variance is not material and provided in the preceding section, the Judge may direct the fact to be found according to the evidence, or may order an immediate amendment, without costs."

Section 271 provides that "Where, however, the allegation of the cause of action or defence to which the proof is directed is unproved, not in some particular or particulars only, but in the *entire scope and meaning,* it shall not be deemed a case of variance within the preceding section, but a failure of proof."

Section 276 provides that "The Court and the Judge thereof shall, in every stage of the action, disregard any error or defect in the pleadings or proceedings, which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." The italics are my own.

In the case at bar there does not seem to be any variance in the pleading, but simply a want of particularity. Can it be contended that in the case at bar it has been alleged or proved to the satisfaction of the Court that the defendant has been actually misled by the complaint, or that the cause of action is unproved in its entire scope and meaning? And yet these are the absolute requirements of the statute before such an exception can be entertained. Was it not the duty of the defendant to move in the Court below, and if it was silent, there where the objection, if valid, might have been remedied, can it now be heard? It is not denied that the complaint states a cause of action, and if the defendant wanted more particulars, why did it not ask for them?

My second objection is the unjust discrimination between the plaintiff and the defendant. In damage suits, why should the plaintiff be required to set forth in full every particular fact relied on to show the negligence of the defendant, and yet the defendant be permitted to show any act within the range of human conduct under the bare allegation that the negligence of the plaintiff contributed to his own injury? In *Cogdell v. Railroad,* 130 N. C., 313, this question was distinctly raised, in relation to which this Court says on page 319: "In its answer, defendant avers 'that the death of the

intestate was not caused by any negligence of defendant, but was caused by the negligence and fault of the plaintiff's intestate himself.' This is a strict compliance with the statute (Acts 1887, Chap. 33), and put plaintiff upon notice as to that defence, as fully appears from the fact of her being prepared with evidence to meet the charge of going upon the car in a drunken condition. However, if plaintiff had not anticipated, and could not with reasonable certainty have anticipated the defence, it would have been proper for the Court, upon application, to have ordered that a bill of particulars be prescribed in The Code."

The plea of contributory negligence is an affirmative defence in the nature of confession and avoidance, which, by express statutory provision, must be alleged and proved. Why should the plaintiff be held to a stricter rule than the defendant under similar circumstances? Why can not an equal measure of right be given with an impartial hand?

My view of the merits of this case is briefly this: If the defendant employed a skillful and competent superintendent, and he used all the means which would have been employed under the circumstances by a man of ordinary prudence and equal skill to determine whether the second blast had been fired, the defendant would not be liable; but this is a fact for the determination of the jury.