[No. 4704.]

THE POORMAN SILVER MINES OF COLORADO, LIMITED,
v. DEVLING.

|  |  |
|---|---|
| 34 | 37 |
| f34 | 49 |

1. **Master and Servant—Negligence—Safe Place to Work.**

Where the place of work is not permanent or has not been previously prepared by the master as a place for the doing of the work, or where the servant is employed to make his own place to work in and the place is the result of the very work for which the servant is employed, or where the place is inherently dangerous and necessarily changes from time to time as the work progresses, the doctrine that the master is required to furnish a safe place for the servant to work is not applicable.

2. **Same—Delegation of Duty to Examine Place—Fellow Servant.**

Where a mining company was engaged in sinking a winze through hard rock that had to be drilled and blasted and employed two shifts of men and the men were employed with the understanding that it was the duty of the men composing each shift to remove the debris left by the blasts of the former shift and to examine for missed holes or shots before beginning to drill, the company was not required to inspect the winze to see if it was safe and warn the workmen, but the examination to see if any of the blasts of the former shift had missed related to the details of the execution of the work and could be delegated by the master to the workmen and by whomsoever done was the work of a fellow servant.

3. **Same.**

Where a mining company engaged in sinking a winze employed two shifts of men and required each shift to remove the debris from the blasts of the former shift and to examine

for missed shots before beginning to drill, the fact that the mine foreman made such examination would not relieve the men of the duty of making the examination and the act of the foreman in making the examination was an act of a fellow servant and not that of a vice principal.

4. Same—Obeying Command of Master.

Where a mining company engaged in sinking a winze required each shift of employees to remove the debris from the blasts of the former shift and examine the place where they were at work for missed shots before beginning to drill, and the mine foreman entered the working place with one of the shifts and in the presence of the men examined for missed shots and inspected a hole which he concluded was drilled and not finished by the former shift and so informed the men and directed them to finish drilling the hole, when in fact it was a missed shot, and the men also believing it was an unfinished hole drilled by the former shift proceeded to drill it out, when it exploded, injuring the men, the foreman's assurance to the men that the place was safe and his direction to them to proceed to drill out the hole did not relieve them of the duty of examining for themselves and they cannot excuse themselves for failing to make such examination on the ground that they were obeying the command of their superior, and the company was not liable.

*Appeal from the District Court of Boulder County: Hon. Christian A. Bennett, Judge.*

Action for damages for personal injuries on the ground of negligence. From a judgment for plaintiff, defendant appeals.

The injury was caused by the explosion of a "missed hole," while plaintiff was sinking a winze in defendant's mine. The specific acts of negligence charged in the complaint against the defendant are: (1) That it was guilty of negligence in not furnishing the plaintiff a safe place in which to work; (2) that defendant, through its vice principal, failed to exercise ordinary care to search for missed shots in plaintiff's place of work before directing him to work therein, and that, had defendant exercised such reasonable care, it would have discovered that the

hole in question was a missed shot, and not one which had been begun but not completed by the previous shift of workmen; (3) had defendant not interfered with plaintiff's usual course of work, and assumed to inspect the place of work for itself and assured plaintiff of its safety and directed him to proceed therewith, plaintiff would not have done the work which caused the injury.

The defenses were a denial of negligence on the part of defendant, a plea of contributory negligence, and an assumption of risk, by the plaintiff.

The evidence tended to prove the following facts—indeed, they are admitted, or clearly established: The defendant, a corporation, owned and worked a silver mine in Boulder county. Neil D. McKenzie was its superintendent and W. H. Johns nominally its shift boss, or foreman, but, as plaintiff says, invested with complete control. It was engaged in sinking a winze from the second to connect with an upraise from the third level of the mine, the work on both being prosecuted at the same time. The winze was run on an incline through hard rock, all of which required drilling and blasting, and the sinking was done by two shifts, a day shift, composed of plaintiff and another workman, and the night shift, consisting of two other fellow workmen. The plaintiff, a miner of about twenty-one years' experience, made application for and was engaged to do the work of drilling and blasting in this winze.

The manner of doing the work was for each shift to drill three holes and charge the same with sticks of dynamite or other explosive, and when these charges were deposited in the holes made for them and the fuse thereto fixed and lighted, the workmen retired to a safe distance, listened for the reports, and remained there until after the explosions occurred. These shots were discharged towards the

end of the shift, and if the number of reports did not correspond to the number of loads, the rule of defendant required the workmen who lighted the fuse to indicate the same by depositing a written notice in a receptacle which was provided by the company for that purpose, and before the succeeding shift began work it was their duty, under the rules of the company, to examine this place to ascertain if all the shots had been discharged. It was also the duty of each shift before beginning to drill and blast to remove the debris left by blasting, and also to examine for themselves to see if there were any "missed shots" or "missed holes,"—that is, to see if any of the dynamite or explosive material was left in any of the holes previously drilled and filled.

On the morning of the accident, the plaintiff and his fellow workman Bryant, who constituted the day shift, entered the winze to continue their usual work. Before doing so they examined the receptacle to see if any missed shots were left, and found that the workmen of the previous night shift had not given any notice thereof. The latter testified, and it is not disputed, that they heard three distinct reports in the winze corresponding to the number of holes they had loaded.

Johns, who entered the winze about the same time, directed the workmen not to remove the debris as usual before commencing to drill, and instructed them to begin drilling at once, as the company desired speedily to make connection with the upraise, the top of which was then only a few feet distant from the bottom of the winze. The three men observed a drill hole about six inches in depth in a bench above the bottom, and were uncertain whether it was a "missed hole" or one that the preceding night shift had begun but not finished. Johns thereupon made an examination to ascertain what it was.

employing the instrument in common use for that purpose. According to plaintiff's testimony, which is the only evidence in the record upon this question, Johns got down on his knees and inserted the pointed end of the instrument in the hole, scraping it out with the spoon end, and did the work carefully. He was engaged in this investigation for about five minutes, and during all the time plaintiff and his fellow workmen were standing a few feet away, with candles in their hands, and watched him while he was doing the work. From his inspection Johns apparently reached the conclusion, and so stated to the plaintiff, that the hole was one which was drilled, and not finished, by the night shift, and he told the plaintiff that it was safe, and directed him to drill the same deeper.

The plaintiff says that he himself saw the hole, and it did not look like a missed hole. He states that Johns told him it was safe, and the witness said that he himself thought that it was safe, as he did not think it was a missed hole.

After Johns made this examination and gave orders to sink the hole deeper, he left the winze and did not return. Without removing the debris from the place where it had fallen, plaintiff and his fellow workman first, and for two or three hours, were engaged in drilling a hole in the winze to the usual depth of about twenty inches, at the end of which time they began to sink deeper the hole which Johns had examined in their presence. They had proceeded only a few minutes when an explosion occurred which resulted in serious injury to plaintiff, to recover damages for which this action was brought.

Mr. Hugh Butler and Mr. Chas. M. Campbell, for appellant.

Mr. H. N. Hawkins, Mr. John R. Wolff and Mr. Ralph E. Esteb, for appellee.

Mr. Justice Campbell delivered the opinion of the court.

1.   The doctrine of safe place is foreign to this case.   Where, as here, the place of work is not permanent, or has not been previously prepared by the master as a place for the doing of the work, or where the servant is employed to make his own place to work in, and the place is the result of the very work for which the servant is employed, or where the place is inherently dangerous and necessarily changes from time to time as the work progresses, the doctrine contended for has no application.—*City of Greeley v. Foster,* 32 Colo. 292.

The instructions given by the court upon this branch of the case were therefore wholly inapplicable to the facts, and, aside from being not pertinent, were wrong in that defendant was thereby made an insurer of plaintiff's safety in this respect, whereas the duty in a proper case is only to make the place of work reasonably safe.

2.   Plaintiff's theory, which seems to have been adopted by the trial court, was that Johns was the vice principal of the defendant, for whose negligent acts, without regard to their character, the defendant was absolutely liable.   Under some authorities, the facts disclosed by this record would not make Johns a vice principal in any aspect, but only a fellow servant of the plaintiff; but, for our present purpose, and without deciding the point, we may safely assume that he was a vice principal of defendant with respect to all of the positive or absolute duties which devolved upon the defendant as a master.   But it does not follow that a master is liable for every negligent act of one who, in these respects, is his vice principal.   As to some of his acts, one may be a vice principal of the master, and as to other acts a fellow servant.   Plaintiff avers in his complaint that, had

not Johns interfered, as he says, with the ordinary method of doing the work, it would have been, under defendant's rules, plaintiff's duty and that of his fellow workmen to search for missed holes before beginning the work of drilling. By that rule, and under the terms of employment, it was not a positive or absolute duty of defendant to inspect the winze to see if it was safe, and warn the workmen. Plaintiff knew of this rule and, in law, agreed to observe it when he entered upon the service which required him, as a part of his regular work, to make the inspection. This examination pertained to the manner of operating the mine. It related to the details of the execution of the work, and could be, and in this case was, delegated by the master to his workmen, and by whomsoever done was merely the work of a fellow servant.

Had not Johns, therefore, made this inspection, plaintiff would have had no cause of complaint against the defendant because, if there was any negligence in not discovering the missed hole, it was the negligence of his fellow workmen in the previous shift, or of himself and Bryant, his helper, or the joint negligence of both shifts. If Johns was the vice principal and, as such, the *alter ego* of the master with respect to all its positive or absolute duties towards its servants, he might, as we have said, as to other duties which might be delegated, act as a fellow servant. But the particular contention here is that because Johns, the defendant's foreman, made an examination of the hole in the bench near the bottom of the winze, and reached the conclusion that it was not a missed hole, and told plaintiff that it was safe, and ordered him to sink the same deeper, plaintiff thereby was relieved of the duty of making any examination for himself, and might follow the orders of the foreman without assuming any risk

by doing so, for the inspection, as well as the order, was that of Johns acting as a vice principal.

In *Deep Mining Co. v. Fitzgerald*, 21 Colo. 533, it was said that the test of liability of the master for the negligence of the servant is the character of the act rather than the relative rank of the servant. The same rule is expressed in *D. & R. G. R. R. Co. v. Sipes*, 23 Colo. 226, 231, in the statement that the specific act in connection with which the negligence occurs is the criterion by which the liability of a master is fixed, rather than the rank of the servant who performs the act. The rule is well illustrated in *Molique v. Iowa G. M. & M. Co.*, 18 Colo. App. 223, where the court, speaking by Gunter, J., held that the alleged act of negligence was that of a fellow servant because it occurred in the operation of the enterprise in which the defendant was engaged, and not in the construction, prosecution, or management of the plant by means of which the enterprise was carried on. Under the rule which prevailed in this mine of which plaintiff had knowledge, and which he sets up in his complaint, it was not an abosolute duty of the master or the vice principal to inspect the place of work to see if it was safe. On the other hand, the duty was one which could be, and was, delegated. When the three workmen were in the winze, all of them saw this hole. Its presence furnished at least some evidence of a missed shot. If we assume that it was then the duty of Johns to make a careful examination, it certainly was equally the duty of the plaintiff to take the same precautions for his own safety. The examination was made in the presence of plaintiff, and he was as competent a miner, and knew as much of the danger of the work in which he was engaged, as Johns. If Johns failed to use ordinary care in examining this hole, or if he should have done something more than he did, we are not advised

of it.   No objection or protest was made by plaintiff
to the examination, and it is apparent that plaintiff's
own belief, based upon the investigation which was
made, coincided with that of Johns, which was that
the hole examined was not a missed shot.   The assur-
ance of safety made by the foreman was to plaintiff's
knowledge based upon the examination made in his
own presence, with which he was apparently per-
fectly satisfied.   It is clear that, under our own deci-
sions, Johns, in making this inspection, acted merely
as a fellow servant with the plaintiff, and that the
master is not liable for the negligence, if any was
committed.

The situation was this:   To three experienced
miners present in the winze, one of whom, in the
presence of the others, inspected the same, which
inspection was satisfactory to all, the place seemed a
safe one in which to prosecute further work.   And
even if the duty of inspection was an absolute duty
of the master, when the inspection which was made
was satisfactory to three experienced miners, one of
whom was the plaintiff himself, it is difficult to see
how there could be any liability of the master for
injuries resulting to either one who acted in accord-
ance with the common belief.

3.   Plaintiff seeks to evade the application of
the doctrine just announced by insisting that what
he calls the interference of Johns withdraws this case
from it.   His argument is, that though it would have
been his duty to examine this hole for himself had
not Johns interfered, when Johns did take it upon
himself to make the examination, there was no fur-
ther obligation upon the part of the workmen of the
mine to make the examination for themselves.   A
sufficient reply is that, even if Johns were the vice
principal, he could not, in performing the work of a
mere fellow servant, which this inspection was, re-

lieve the plaintiff of the duty to take due precautions for his own safety. But, under the undisputed facts, there was no such interference upon the part of Johns. The plaintiff neither protested nor objected to what was done, and apparently was satisfied with the result of the examination, and considered the place as safe a one to work in as such places usually are. If, as a matter of fact, the examination was not carefully performed, or plaintiff was dissatisfied with it, it was his duty and he had abundant time and opportunity to make a further examination for himself before beginning the work of drilling. After Johns left the winze, the plaintiff and Bryant, his helper, were engaged for two or three hours in drilling another hole before they began to sink this particular one deeper. The case is not one where a servant is suddenly ordered into a place of danger by the master without an opportunity to examine it for himself and being ignorant of its character while the master knew, or should have known, its true character, and therefore the doctrine invoked clearly does not apply.—*C. B. & Q. Ry. v. McGraw,* 22 Colo. 363, 367, 368.

Plaintiff knew that explosive material put in drilled holes does not always explode "when fired," and as to whether or not the particular hole examined was or was not dangerous was or might have been as well known to him as to Johns. Whether the defect or danger was a latent or patent one, it was as obvious to him as to Johns, and he had ample time and opportunity to make the place of work safe. In short, if Johns was negligent in making the examination, plaintiff was equally culpable in not making one for himself. On the other hand, if Johns exercised due care and caution in what he did to discover the danger and failed, certainly defendant cannot be liable even if plaintiff was relieved of the duty of

inspection. The case is one where the master and servant had equal knowledge and means of knowledge of ascertaining the true character of the place of work which was inherently dangerous, and which was the very thing the servant was employed to do, and the particular danger encountered was one that not infrequently happens .in work of this character. No information was withheld from the plaintiff by the master, nor was he lulled into a sense of security..

4. Intimately connected with if not essentially included in the two foregoing points, but separately argued by counsel, is the contention that plaintiff was protected by his obedience to the foreman's commands. The discussion of it involves more or less repetition, but as plaintiff confidently relies upon it, we give it separate and further consideration. The general rule is, that the servant's duty is to obey the orders of his master, and ordinarily he will be excused if he complies therewith. Invoking that doctrine, plaintiff says that when the foreman ordered him to sink the hole deeper, he was bound at the peril of discharge to obey. The doctrine, however, is wholly inapplicable to the facts of this case. The mere order to do this work does not, of itself, constitute negligence. The work of drilling was the same in kind as that which the plaintiff under his contract was required to do. He was not, as we have said, suddenly called upon to obey an order of his master to go into a dangerous place, or to engage in a dangerous work, without an opportunity upon his part to investigate the place or character of the work, he being ignorant, and the master aware, of its real nature. He was a miner of twenty-one years' experience, of ordinary skill and intelligence, knew the usual dangers to be apprehended in prosecuting work of this kind, and saw the hole in which the danger

lurked, and after having been present when it was examined, accepted the result thereof, and acted in accordance with it. He must, therefore, be held to have voluntarily entered upon this particular work which resulted in his injuries with as ample knowledge of its true character as that possessed by his master. It was one of the natural and ordinary risks which he assumed, and if there was any negligence, he contributed to it by his own remissness, and, in either case, there can be no recovery.

Plaintiff was not requested, or directed, to forego, or omit, any examination for himself, and no act or omission of the foreman increased, or added to, the danger of the work; but, if it did, plaintiff's own voluntary omission contributed to that injury, and, in either event, there can be no recovery.

We have not specifically considered all the errors argued, as the foregoing discussion sufficiently disposes of the case. Our views upon the vital questions which we have discussed are at variance with those entertained by the district court; hence its judgment must be reversed. In addition to the authorities already cited, and in support of our conclusion, see *Haas v. Balch*, 6 C. C. A. 201; *McQueeny v. Chicago etc. Ry. Co.*, 120 Ia. 522; *Browne v. King*, 100 Fed. 561; *Anderson v. Daly M. Co.*, 15 Utah 22; *B. & O. R. R. Co. v. Baugh*, 149 U. S. 368, 384; *N. E. R. R. Co. v. Conroy*, 171 U. S. 384; *Harris v. Balfour Quarry Co.*, 131 N. C. 553; *Christienson v. Rio Grande W. Ry. Co.*, 27 Utah 132; *Lenderink v. Village of Rockford*, 98 N. W. (Mich.) 4; *Fort Worth etc. Co. v. Whittenburg,* 78 S. W. (Tex.) 363; *Lach v. Burnham*, 134 Fed. Rep. 688; *Van Derhoff v. N. Y. C. & H. Riv. R. R. Co.*, 84 N. Y. Supp. 650; *Smith v. Hecla M. Co.*, 80 Pac. 779.

Notes to cases in *Tedford v. Los Angeles Elec.*

*Co.,* 54 L. R. A. 85, 118, 138, 164, and *O'Neil v. Gt. Northern R. R. Co.,* 51 L. R. A. 532, 590.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.