[No. 4412.]

## THE CITY OF GREELEY V. FOSTER.

**1. Negligence—Pleading.**

In an action against a city by an employee for damages for personal injuries received by the caving in of the sides of a ditch being excavated by defendant and in which plaintiff was at work as a day laborer, a complaint which alleges the failure of defendant to provide a reasonably safe place for plaintiff to work in, the danger of which was known to defendant and unknown to plaintiff and could not have been ascertained by the use of ordinary care by plaintiff, and that the risk was extra hazardous and was not an ordinary risk incident to the business, states a cause of action, although, so far as the allegations disclose, the person in charge of the construction of the ditch, and under whom plaintiff was at work, was a mere fellow-servant with plaintiff.

**2. Negligence—Master and Servant—Presumptions.**

In an action by an employee against his employer for damages for personal injuries, negligence cannot be presumed from the happening of an accident.

**3. Contributory Negligence.**

Where an employee in the employment of a city in the work

of excavating a trench was directed by his foreman to enter the trench for the purpose of bracing the sides to prevent a threatened cave-in and voluntarily obeyed the order with full knowledge of the threatened danger, he was guilty of contributory negligence and cannot recover damages from the city for injuries received by a cave-in of the banks.

4.   Negligence — Incompetency of Employee—Evidence — Pleading.

In an action by an employee against his employer for personal injuries, it is error to permit the introduction of evidence tending to show incompetency of the foreman under whom plaintiff was at work, where there was no allegation of incompetency in the complaint.

5.   Negligence—Safe Place—Instructions.

An instruction which makes it the duty of defendant, an employer, to provide an absolutely safe place instead of a reasonably safe place for his employee to work in, is erroneous, and unless cured by other instructions is reversible error.

6.   Negligence—Safe Place—Making or Repairing the Place.

The doctrine that an employer is required to furnish a reasonably safe place for his employee to work in, applies where the employee is put to work in a permanent place prepared by the employer or other workmen, and does not apply where the work being done by such employee is the making or repairing of the place.

7.   Same—Assumption of Risk.

Where the risk of working in a place is assumed by the employee, the doctrine that an employer is required to furnish his employee a reasonably safe place to work in does not apply. An employee employed to assist in repairing and putting into a safe condition an unsafe working place assumes whatever added risk may come from such work.

8.   Master and Servant—Obeying Orders of Superior—Assumption of Risk—Contributory Negligence.

A servant is generally excusable for obeying orders in and about his master's business from one in authority over him as a representative of the master.  But when the danger to be incurred from such obedience is so plain and manifest that no prudent person would obey, or the thing ordered to be done was what the servant, with full knowledge of the perils ordinarily incident thereto, was employed to do, he is guilty of contributory negligence and assumes the risk incident to such work, and cannot recover for injuries received in obeying such orders.

9.  **Negligence—Assumption of Risk—Pleading.**

In an action by an employee against his employer for personal injuries, where the risk was one ordinarily incident to the work being performed, the defendant may avail himself of the defense of assumption of risk without having specially pleaded it.

*Appeal from the District Court of Weld County.*

Mr. C. D. TODD and Mr. H. E. CHURCHILL, for appellant.

Mr. RALPH E. ESTEB, Messrs. THOMPSON & THOMPSON, and Mr. A. C. PATTON, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

Action to recover damages for personal injuries due to the negligence of the defendant. Judgment for plaintiff. Defendant appeals. A tile drain, which had been laid in one of the streets of the defendant city, proving inadequate for the purpose for which it was constructed, the city determined to take it up and put in a larger one. This made it necessary to dig in the street above the old drain a ditch three feet wide and six feet deep. The work was done in the late winter and early spring by the city itself, under the immediate supervision of H. P. Heath, one of the members of the city council. The ground was thoroughly saturated with water, and a steam engine was used to pump this water out of the ditch and the manholes as the work was carried on. The old tile were also filled with water, which was poured into the trench as they were taken up, and the water, warmed somewhat by the escaping steam, was constantly flowing through the ditch, which caused the edges of the ditch at the bottom to be loosened, and thus withdrew support from the overhanging soil. In digging the trench to prevent caving of its sides which, for the reasons mentioned, occurred at dif-

ferent points of the work, from the beginning to the end, the sides were shored or sheeted. This sheeting consisted of boards or pilings placed upright against both sides of the trench and driven into the soil at the bottom, along which, horizontally, 16-foot stringers were laid, which in turn were held in place by cross-braces. The city at all times furnished, in close proximity to the ditch, suitable and abundant material for properly curbing it.

The plaintiff, as the complaint alleges, was employed as a day laborer in all the work of excavating the trench and relaying the drain tile, and for such other work in that connection as was ordinarily required. At the trial, plaintiff testified that he was employed to do whatever work was necessary to be done in and about the digging of the trench, the removing of the tile, leveling the bottom thereof for the reception of the new tile, sheeting or curbing the trench, relaying the new tile, and filling in the trench when the same was laid. The plaintiff had been doing this kind of work for a period of about thirty days, and although he had never been engaged in similar work before, was entirely familiar with the nature of the soil in which the trench was dug, was aware that in digging the same its banks or sides had fallen in or exhibited that tendency, and that material had been furnished by the city for safeguarding it, knew what the sheeting was put in for, had assisted in putting it in, and, as different sections were completed, in taking it out. In short, he had, in all respects, as much knowledge of the nature and character of the work and the dangers incident thereto as the foreman himself.

The work was done in sections, and as fast as one section was completed and new tile laid, the ditch was filled in with earth and a new section begun. When the accident which resulted in plaintiff's injury

occurred, the trench had been completed and filled in with the exception of about thirty feet at one end, and the only work left to be done was the laying of tile, or connecting that already laid with a manhole. About half an hour before the injury was received, plaintiff was working at a manhole at the extreme end of the ditch, and was then called from this place by the foreman to go to the unfinished section of the trench to do whatever was necessary in completing it. For nearly thirty minutes he was engaged in wheeling dirt from or near the manhole, about thirty feet distant, and dumping it into the unfinished trench, and in doing so necessarily saw its condition. By the order of the foreman, given some time in the morning of this day, the stringers, cross-braces, and the uprights on the south side had been removed, so that the workmen could dump the dirt into the trench, instead of shoveling it over the piling that extended several feet above the natural surface. The north side gave evidence of caving, which was called to the attention of the foreman, and he determined to replace the curbing, in order to make the place safe for the workmen to finish the work of laying or connecting the tile. About five minutes before the injury occurred, when some one on top called out that caving had begun, plaintiff and others stopped the work they were then doing, and the foreman directed plaintiff to go down into the trench and assist a fellow-laborer named Thomas, who was already therein, in replacing the cross-braces. In obedience to the order, plaintiff got down into the trench, and was holding one end of a stringer, the other end of which was held by Thomas, and, while they were attempting to put in the cross-braces, the earth from the north bank caved in and fell against plaintiff, pinning him against the south wall, and thus caused the injuries complained of.

No evidence was introduced by the defendant, and the case was submitted to the jury upon that of the plaintiff and his witnesses. In his examination in chief, plaintiff was of the impression that he was ordered into the trench for the purpose of removing a plank, so as to make level the bottom of the trench on which the plank was to be laid for the reception of the tile; but, by his cross-examination and the testimony of his own witnesses, it is clearly established that he was ordered by the foreman to go into the trench, and knew that he was sent into it, for the express purpose of making it a safe place. If this were not so, plaintiff learned that such was the work he was to do at once after getting into the ditch, and in ample time to get out of it to escape the danger which he necessarily saw was threatened.

Plaintiff, in his testimony, as in his complaint, says that when he got down into the ditch, he was ignorant of the dangerous character of the place, and did not know that the cross-braces had been removed, but it is quite clear from all the evidence that he not only had full opportunity for knowing the situation, but, as a matter of fact, knew as well as any one connected with the work that there was danger of the bank caving in and injuring those who were working in the trench at the time of the accident, and that the cross-braces had been taken out, and, if he did not actually assist in removing them, was present when others did so, and saw them in the very act. But if he did not know these things, it was his own fault; it was because he did not use his eyes. He cannot close his eyes to danger, and be heard to say that he was not aware of it. All the witnesses testified that any one, whether experienced or inexperienced, if he had used his eyes, would have been able to see that the place was a dangerous one. Plaintiff was an adult, presumed to know the law of gravitation, and

that the tendency of the sides of this trench, in its then condition, left unsupported, was to fall; and if he was ignorant of such a law, the fact was well known to him that the sides of this very trench did fall on several occasions during the work of excavation, and he was ordered to assist in shoring the trench at this place to prevent the happening of the very thing which afterwards did happen and cause his injuries, and which he, and all those present, knew was imminent from the indications visible to all of them. He was not called upon suddenly by the foreman to go into a place of danger, of which he was, and the foreman was not, ignorant, but he was actually engaged in a work for which he was employed, and which, in the very nature of things, was to his own knowledge obviously dangerous, and which he was doing in order to make safe a place for himself and others to work in.

It is alleged in one part of the complaint that this particular work of bracing or curbing the trench at which plaintiff was engaged at the time he received his injuries, and which was extra hazardous to defendant's knowledge, of which he was not aware, was not that for which he was employed, but he admitted at the trial that every kind of work that was necessary to be done in order to put in a new drain was within the terms of his employment.

The defenses were that defendant was not guilty of negligence, that plaintiff's own negligence contributed to the injury, and that the risk of danger from the very work in which he was engaged was voluntarily assumed by him under the terms of his employment. Under the issues thus joined, and upon a state of facts substantially as we have above outlined, the case was submitted to the jury, which found a verdict for the plaintiff. The defendant has assigned many errors, most of which in the view we

take of the case are not of importance upon this review.

1.    The defendant insists that the complaint does not state a cause of action.  This case was once before our court of appeals, and by that tribunal it was held that the complaint did state a cause of action, although, so far as its allegations disclose, H. P. Heath, who was said to be superior in authority to plaintiff, was a mere fellow-servant.  But this circumstance was not considered by the court of appeals, nor is it by us, as important in the light of the other allegations.  *Foster v. City of Greeley,* 15 Colo. App. 176.  We are of opinion that the complaint on its face states a cause of action, and the specific negligence alleged was the failure by defendant to provide a reasonably safe place for the plaintiff to work in, the danger of which was known to defendant and unknown to the plaintiff, and could not have been ascertained by him by the use of ordinary care in the circumstances of the case.  It was also alleged that the risk was not of the kind called ordinary, nor was it incident to the work, nor obvious, but extra hazardous, and beyond the ordinary risk assumed by plaintiff; and so the case, on paper, was taken out of the rule that applies in the absence of such averment.

2.    The court instructed the jury in effect that negligence might be presumed from the happening of an accident.  This was error.  This doctrine has been enunciated in cases of personal injury by a common carrier to a passenger; but, as stated in Reno's Employers' Liability Acts (2d ed.) § 206, it does not apply to actions between employees and employers for personal injuries founded upon negligence, though there are some cases of a contrary tendency in Massachusetts, and probably in some other jurisdictions.  See also:—*Sack v. Dolere et al.,* 137 Ills. 129, 137; The Nitro-Glycerine case, 15 Wall. 524, 537.

Our court of appeals is committed to the doctrine that no presumption of negligence arises from the happening of an accident in actions by an employee against an employer for personal injuries, and we think its reasoning is sound.—*D. & R. G. R. R. Co. v. Robinson,* 6 Colo. App. 432; *D. & R. G. R. R. Co. v. McComas,* 7 Colo. App. 121; *Bishop v. Brown,* 14 Colo. App. 535.

3.    Contributory negligence was specially plead-ed by the defendant. The plaintiff was directed by the foreman who had charge of the work to enter this trench for the purpose of putting in cross-braces to hold in place the sheeting or curbing that was ren-dered necessary to prevent the caving of the banks. The danger was just as obvious to plaintiff as to defendant. It was not a case where the danger was known only to the master and not to the servant, nor was it one where, in a case of emergency, the servant was suddenly called upon by the master or his representative to do work which was dangerous because of some hidden or latent danger. The plain-tiff voluntarily did as he was ordered, and was engaged in doing that which he himself was employed to do, and which he, as well as others, knew was attended with more or less danger, real, apparent, open and obvious, not latent, concealed or hidden; so that, if defendant was chargeable with negligence by reason of the order of its foreman, plaintiff was equally guilty of negligence that directly contributed to the injury, and cannot recover.

4.    There is no allegation in the complaint that Heath, who was alleged to be superior in authority over the plaintiff, and who, as was claimed at the trial, was its vice-principal, was incompetent, either at the time of his employment by the city, or that he became so afterwards; yet at the trial the court per-mitted evidence to be introduced by the plaintiff tend-

ing to show incompetency of Heath for work of this character. This, of itself, was prejudicial error.

5. In one of the instructions given by the court the jury were told that it was the duty of the defendant in this case to provide a safe place for the plaintiff to work in, and if in this respect there was negligence, plaintiff was entitled to recover. If this belonged to the class of cases to which the rule is pertinent, the instruction is erroneous in that the duty of the defendant is said to be to provide an absolutely, and not a reasonably, safe place in which to work. The same error was accentuated by repeating the same language in other parts of the charge, and was not cured by other instructions that only reasonable care to that end was demanded. Such an instruction was considered reversible error in *Grant et al. v. Varney*, 21 Colo. 329. It is not always that the giving of an instruction technically erroneous is necessarily reversible error, and an instance of the kind is found in *Portland G. M. Co. v. Flaherty*, 111 Fed. 312, a case where it was the duty of the employer to provide a reasonably safe place. There, however, the instruction, which omitted the necessary qualification, was immediately followed by languge in which the jury were expressly told that the defendant was in no sense an insurer of the plaintiff's safety, but was required to use only that care which a reasonably prudent man would use in such circumstances; and besides, and what is of itself conclusive, the instruction was harmless because the defendant admitted at the trial that the place furnished by him was not reasonably safe, and defended the action upon the ground that he had never ordered the plaintiff to work therein for the very reason that he considered it dangerous. That is entirely different from the case in hand.

6. But for a much stronger reason the trial

court was wrong when it ruled that the doctrine of safe place governs this case. Cases like *Hanley v. Cal. Bridge & Construction Co.*, 127 Cal. 232, cited by plaintiff in support of the rule that the master is bound to furnish a reasonably safe place for the servant to work in, are not in point. A careful examination of them shows that the doctrine relates to a place permanent in its character, and where a recovery has been allowed for failure of a master in this respect, it is where the servant has been put into a permanent place that is dangerous, and that place has been prepared by the master himself, or by other workmen. But here, where the plaintiff was making his own place to work in, the rule is clearly inapplicable.

In 2 Bailey's Personal Injuries, relating to Master and Servant, in chapter 15, at section 2934, the author refers to the distinction made between cases where employees are of the crew who are making the trench, and where, after it is made, an employee is set to work to perform labor of a different character in the trench which has thus been prepared as a place for doing the work. The master is not under obligations to make reasonably safe the trench for those employees who are actually engaged in making it, but his duty is to have the trench made reasonably safe for the second class of employees who are to perform work of a different character in the trench after it is made.

In section 3022 *et seq.* of the same work it is said to be the rule that where a piece of property is out of repair, as this trench was which the plaintiff was seeking to put into proper condition, a servant who is employed in making it safe takes upon himself whatever added risk comes from the existing condition of the place or the work.

Cases, in some of their features, quite similar to

the one at bar are: *Petaja v. Aurora I. M. Co.* (Mich.), 32 L. R. A. 435; *Finalyson v. Utica M. & M. Co.*, 67 Fed. 507; *Showalter v. Fairbanks, Morse & Co.*, 88 Wis. 376.

The rule invoked by the plaintiff does not apply when the place at which the work is to be done, and the appliances for the doing of the same, are to be prepared by the servant himself, or where the work and the place of work are coincident. In *Faulkner v. Mammoth M. Co.*, 23 Utah 437, the court said:

"Where the servant is intrusted with the duty of making a place, which is known to be dangerous, safe, or engages in a work the danger of which as he proceeds necessarily changes from time to time, and he is left free to pursue his own course and select his own appliances, he assumes the risk, unless the master has done or neglected to do something that his duty to his servant reasonably requires, which unnecessarily increases the natural hazard of such changes."

There can be no contention here, under the evidence, that the defendant had done, or omitted to do, anything which increased the ordinary hazard of the work which the plaintiff was employed to perform. The defect was not latent at all, but plainly observable. Where the risk of working in a place is assumed, the rule requiring the master to furnish a reasonably safe place, does not apply. The same principle is laid down by our court of appeals in *C. C. & I. Co. v. Lamb*, 6 Colo. App. 255, where it is said there is a wide difference between providing a safe place for the servants to work in, and putting a place already found to be insecure in condition for the resumption of labor. Certainly, the master "had the right to put an insecure place into a safe condition. Laborers who were employed to aid in this effort took upon themselves whatever of added risk might have

come from'' such work. That is precisely this case. Speaking to the same point in *Batty v. Niagara Falls, etc., Co.,* 79 Hun, (N. Y.) 466, the court says: ''It would be an anomalous condition of affairs which would impose upon the master, as a consequence of his efforts to safeguard his employees, liability for an injury resulting to one of them from the very danger which he was seeking to avoid and which was perfectly apparent to the person attempting to remedy the same.'' It was there held, as we hold here, that the risk was either one which related to the detail of the work in which plaintiff was engaged, or one which was assumed by him, and in either event defendant was not liable. And while, as was said by this court in the O'Brien case, *infra,* ''a servant is generally excusable for obeying orders in and about his master's business when such orders are given by one in authority over him as a representative of the master,'' yet when the danger to be incurred from yielding obedience is, as it clearly was in the case at bar, so plain and manifest that no prudent person would obey, or when the thing so ordered to be done was what the servant, with full knowledge of the perils ordinarily incident thereto, was employed to do, and the servant, in such circumstances, obeys, and receives injuries from doing such perilous work, the assumption of risk precludes a recovery, and contributory negligence, also, is established. Other cases clearly in point, showing that under the facts of this case the doctrine of a safe place does not apply, are:— *Callan v. Bull,* 113 Cal. 593; *Lindvall v. Woods,* 41 Minn. 212; *Butler v. Townsend,* 126 N. Y. 105; *Curley v. Hoff,* 62 N. J. Law 758; *Cullen v. Norton,* 126 N. Y. 1; *Heald v. Wallace,* 109 Tenn. 346; *Griffin v. O. & M. Ry. Co.,* 124 Ind. 326; *Colo. Midland Ry. Co. v. O'Brien,* 16 Colo. 219, 225; Reno's Employers' Lia-

bility Acts, §§ 226, 238; *Goodes v. B., etc., Ry. Co.,* 162 Mass. 287.

.These and other like cases hold that whenever a servant is employed to work in the construction, alteration or repair of any place or thing where the work as it is being prosecuted involves the construction of the place itself, the master fulfills his duty to the servant when he furnishes reasonably safe material and appliances for the performance of the work, and selects competent servants to do it. The risk here was one which plaintiff voluntarily assumed. It was implied in the very terms of his contract of employment.

*Town of Colorado City v. Liafe,* 28 Colo. 468, cited by plaintiff, is not in point. It is clearly distinguishable from the case we are considering. There Liafe, who had been employed solely to shovel gravel from a gravel pit into a wagon, had been at work only a few minutes. He had never been at the place before, and was ordered by the street commissioner of the town to work in an apparently safe place, but which, in fact, was dangerous because of a hidden and latent defect previously known by the commissioner to exist, knowledge of which he had not imparted to the plaintiff, who was entirely ignorant thereof, and by the exercise of reasonable care could not have acquired knowledge of it. There are other material differences between the two cases. The principal controversy there was as to whether the negligence of the street commissioner was properly chargeable to the town. The particular point as to whether or not it was necessary for the defendant to furnish a safe place for plaintiff to work in, or whether plaintiff assumed the risk in question, was not raised.

But it is said that the assumption of risk is an affirmative defense that must be specially pleaded, and, since it was not pleaded in this case, defendant

may not be heard to insist upon it either in the court below or here. In a late review of this doctrine in vol. 36, No. 3 of the American Law Review, it is stated that the better and more logical view is that the burden of proof is upon plaintiff. There are cases holding that the defense must be specially pleaded and the burden is upon the defendant. The question is not of importance here, because there are allegations in the answer which, while mingled with the defense of contributory negligence, are, in the absence of proper objections seasonably interposed, sufficient upon which to predicate the defense. Even in jurisdictions where it is held that the defense must be specially pleaded, a late Oregon case says that no plea is necessary when the risk is an ordinary one, for what the law presumes to be a fact, it is not necessary to aver, and that it is only an extraordinary risk assumed by plaintiff which defendant is called upon to plead.—*Tucker v. Northern Terminal Co.,* 41 Ore. 82; Bliss on Code Pleading (3d ed.) § 175.

The defendant, under either rule, is in a position to take advantage of this defense. Indeed, the assumption of risk here is implied from the allegations of the complaint itself. Were it not so, still the fact that plaintiff assumed the risk, that it was one of the ordinary perils of the work he agreed to do, was open and obvious, so clearly appears from the evidence produced by the plaintiff himself, that defendant was in a position to avail itself thereof by a motion for a nonsuit or for an instruction which it asked directing a verdict in its favor.

The court should have sustained the defendant's motion for a nonsuit or directed a verdict for the defendant. For each and all of the foregoing reasons the judgment must be reversed and the cause remanded.                                        *Reversed.*

Mr. JUSTICE STEELE not participating.