[No. 5007.]
[No. 2556 C. A.]

DICKSON v. NEWHOUSE ET AL.

**Negligence—Assumption of Risk—Mines and Mining.**
Plaintiff, an experienced miner and machine-drill expert, was employed in driving a tunnel at water level in defendants' mine. A former shift notified plaintiff that they had left two unexploded or missed shots. The employee who removed the debris shoved it back about four feet from the breast of the tunnel, but neglected to place under the debris a platform so that the water could escape, by reason of which, when plaintiff went to work, he found about eight inches of dirty, black water covering the floor of the tunnel between the breast of the tunnel and the debris. He searched for the missed shots and found one but failed to find the other because it was under the water and concealed. He proceeded to work at drilling, struck and exploded the missed shot and was injured thereby. Held that plaintiff's means of knowing the unsafe condition of his working place was equal with defendants' means of knowledge and that he assumed the risk and is not entitled to recover of defendants for the injury.

*Appeal from the District Court of Arapahoe County:*
*Hon. F. T. Johnson, Judge.*

Mr. C. J. BLAKENEY, for appellant.

Mr. WM. J. MILES, for appellee.

Mr. JUSTICE GUNTER delivered the opinion of the court.

The evidence was: Plaintiff, a miner of five years' experience, and a machine-drill expert of one year's experience, in company with his helper was

employed as a shift in driving a tunnel in the mine of defendants. The tunnel was in about 1,000 feet, and had been driven on a water grade. The preceding shift left a mass of rock and dirt in the tunnel which had been broken down by the shots fired during the shift. The foreman in charge of the mine directed one Clancy to remove this mass, which was lying immediately at the breast of the tunnel, so that plaintiff and his helper would have space in which to operate their drill. The debris was shoveled back about four feet from the breast of the tunnel. It was the duty of the offgoing shift to leave a notice for the oncoming shift of any missed shots, that is, of any charges of giant powder planted by it but not exploded. The offgoing shift left notice of two missed shots. Plaintiff and his helper reached the breast of the tunnel and began work about one hour after the outgoing of the preceding shift. The duty of plaintiff and his helper was to drill holes in the breast of the tunnel, charge them with giant powder and explode the charges for the purpose of breaking down the ore. They found the debris shoveled back, as stated, and the surface of the tunnel between the debris and the breast of the tunnel covered to the depth of about eight inches with dirty black water. This water had seeped from the roof and walls of the tunnel, and its flow along the same had been obstructed by the mass of rock and dirt moved back by Clancy. No means for the escape of this water, by a platform under the debris, or otherwise, had been provided. Plaintiff and his helper were notified of the two missed shots and searched for them, but after diligent effort found only one. They then proceeded with their work. In drilling a hole to be charged they encountered the remaining missed shot; an explosion resulted, killing the helper and seriously injuring plaintiff. The missed shot thus exploded

was in the breast of the tunnel just under the water, and plaintiff testified that but for the presence of the dirty black water, which he says concealed the location of the planted shot, he would have discovered it, and the accident would not have occurred.

It is customary to drive tunnels on a water grade and to provide some means for the escape of the water accumulating by seepage after each shift. For this purpose a platform of boiler iron or other material is usually built and placed upon the floor of the tunnel. This is raised above the floor of the tunnel by being laid upon the track or upon some other support so as to permit the accumulating water to escape under it and flow out through the tunnel. The rock and earth broken down by the shots of each shift are shoveled back from the breast of the tunnel on this platform, from whence it is later moved out of the tunnel.

Upon this evidence there was a judgment of nonsuit, to review which is this appeal.

As stated, no means were provided under the debris for the escape of the water, the flow of which was obstructed thereby. Plaintiff contends that in the failure to provide some means for the escape of the water the defendants were guilty of negligence; that as a result the water accumulated and hid the location of the missed shot, and thereby prevented the plaintiff and his helper from discovering it; that such failure to provide a means for the escape of the water rendered the working place of plaintiff unsafe, and was the proximate cause of the accident.

Several reasons are urged in support of the judgment below. It is necessary to consider but one, that is, if the working place was unsafe by reason of the accumulation of water, and the defendants were guilty of negligence in permitting such condition, the plaintiff knew of the condition, or could

have known of it by the exercise of ordinary diligence, and assumed the risk of working while it existed.

Plaintiff was an experienced miner, and presumably of ordinary intelligence. No special training or peculiar skill other than that of an experienced miner was required to know whether or not his working place was unsafe through the presence of the dirty water. If his working place was unsafe for such reason he knew it as well as defendants could have known it, or had equal means with defendants of so knowing. Why the presence of dirty water rendered the working place unsafe because thereby missed shots could not be found was as well known to the plaintiff as it could have been to defendants, or he had equal means of knowledge with them of so knowing.

In *Denver Tramway Company v. Nesbit,* 22 Colo. 409, Nesbit was employed by the Denver Tramway Company as conductor on its street cars. In passing from the motor to the trailer he fell so as to bring his foot and ankle under the rear wheel of the trailer. There was no fender or life guard on the trailer, and its absence or presence was open to observation. The negligence charged as the proximate cause of the injury was the failure to have a "life guard" or "fender" on the trail car. The court said:

"Conceding that the want of a life guard rendered the car defective and the company was guilty of a breach of its duty in failing to supply it and in operating the train without it, such defect was certainly obvious, and one that the appellee could not have failed to observe if he had used his eyesight, and one that was as open and patent to him as to the company; and if danger was to be apprehended from

the use of the car in that condition, that result was equally apparent to him.

"Under these circumstances he was precluded from recovering by the well-settled rule that an employee assumes all the risks naturally and reasonably incident to the service in which he engages and those arising from defects or imperfections in the thing about which he is employed that are open and obvious, or that would have been known to him had he exercised ordinary diligence. By voluntarily continuing in the service with knowledge or means of knowledge equal to his employer of any defect in the appliances or the machinery used, and without objection, or promise on the part of the employer to remedy the defect, the employee assumes all the consequences that result from such defect, and waives the right to recover for injuries caused thereby."

See also *Harvey v. Mountain Pride G. M. Co.*, 18 Colo. App. 234.

We think the doctrine of assumption of the risk applies herein, and precludes a recovery. Judgment affirmed.                                    *Affirmed.*

Chief Justice Gabbert and Mr. Justice Maxwell concur.