[No. 6407.]

## METALLIC GOLD MINING COMPANY v. WATSON.

1. MASTER AND SERVANT—*Master's Duty as to Place of Work* —Where the servant's employment is that of making a dangerous place safe the rule that the master must provide him a safe place in which to work has no application, e.g. where an experienced miner, familiar with all the dangers of the employment and the condition of the mine is set to timber an unsafe place in order to future safe working therein. In such case the servant

knowing the danger, there being no negligence on the part of the master, assumes the risk—(284).

2. NEGLIGENCE—*Question for the Court*—When the facts are not in dispute, and it is plain that the plaintiff assumed the risk of injury, the trial courts should so decide as a matter of law—(284).

3. PLEADING—*Filing Replication at Trial—Discretion of Court*—The trial court may in its discretion allow a replication to be filed after a motion for judgment for want of it, and after the jury are empannelled—(286).

4. JURY—*Challenge for Cause*—In the action of a servant against master for an injury attributed to the negligence of the latter, one called as a juror and examined on the *voir dire*, testified that he entertained a natural sympathy for a laboring man; that if the evidence was clear this would make no difference with him; that he would try the case entirely upon the evidence and the instructions of the court, allowing nothing else to influence him; but that it would require perfectly clear evidence to overcome his feeling for the laboring man. *Held*, that a challenge for cause should have been sustained—(286).

5. INSTRUCTIONS—*Not Applicable to the Evidence*, are misleading and should not be given—(286).

*Appeal from Teller District Court*—HON. JAMES OWEN, Judge.

Plaintiff alleges, that March 19, 1906, he worked for defendant on a mining claim in Teller county, and was sent into a drift on the second level, where there had theretofore been a cave-in; that defendant knew it had occurred several months before, but did nothing to prevent further cave-ins or injury in the drift; that no timbering had been placed therein, and the law had not been complied with requiring mines to be made safe; that the mine was then in a dangerous and unsafe condition, and, when it sent him into the drift to work, defendant knew its condition; (It will be observed he fails to state what work he was sent to do, or was doing in the drift at the time of the accident, and that he had no knowledge of the condition.) That he worked there a little less than an hour, when a portion of the walls

fell down upon and severely injured him, which was due to no negligence of his, but to the negligence of the defendant. The second defense alleges that plaintiff's injuries, if any, were caused by his own negligence. The third, that he received them while engaged in employment the risk of which he assumed when he entered and continued in the employment.

August Holmes, a juror challenged by defendant for cause, on his *voir dire,* testified:

"I entertain a natural sympathy for the laboring man; am a miner myself. Q. If you started into the trial of this case, you feel that you would start in with a bias in favor of the plaintiff in this case? A. If it was a leaning any way at all, it would lean towards the laboring man. Q. Do you think that the sympathy that you would entertain for a laboring man who has been injured would cause you to favor him in the beginning of the case, and cause your mind to lean in favor of him? A. If the evidence was clear, it wouldn't make any difference to me at all. Q. You state that if the evidence was clear, you would be able to decide fairly? A. Yes, I would. Q. Just explain what you mean by that? A. If the evidence was muddled the least bit, I would favor the laboring man. Q. It would require perfectly clear evidence against him in order to overcome that feeling, is that correct? A. Yes."

The Court: "In the trial of this case would you be governed solely by the evidence as you hear it from the witness stand, and the instructions as regards the law as given you by the court, in arriving at your verdict in this case? A. Yes, sir. Q. You would allow nothing else to influence your verdict in this case? A. No, sir; I wouldn't."

Challenge denied. Defendant exercised four peremptory challenges, Holmes being one of the four.

After the jury was empaneled, before the intro-

duction of evidence, defendant moved for judgment because, 1st. Upon the pleadings and the law, plaintiff is not entitled to recover. 2nd. The complaint does not state facts sufficient to constitute a cause of action. 3rd. There is no reply to the defense of contributory negligence. 4th. There is no reply to the defense of assumption of risk. 5th. The complaint alleges a dangerous condition, but does not allege plaintiff had no notice or knowledge of it. Upon oral application, unsupported, the court allowed plaintiff to file, instanter, a reply denying the affirmative defenses, and then overruled the motion.

Statement of Facts: To properly understand the case, it is necessary to make a somewhat extended statement of the facts. Plaintiff, an experienced miner, thirty-nine years of age, familiar with all departments of underground metalliferous mining, was employed October 26, 1905, by the defendant on the Bill Nye lode mining claim. It was a prospect, and the company was working four men under a superintendent named Blanchard. The departments of labor were not separated as in large mines, and the miners did the timbering. In August and September, 1905, a drift was run on the second level through a lime formation, requiring no timbering at the time; but exposure to air caused it to slack, and pieces of rock to fall from the roof, which, at the time of the accident, was from seven to eight feet above the floor. From his employment in the mine until the accident, some five months, plaintiff passed through the drift several times daily and was as familiar with its condition as the defendant. There had been no work in or on this drift since it was driven, but it was used by the miners as an entry or passageway to and from their work, and they kept powder stored in it which plaintiff removed on account of the condition of the roof. No one was injured, however, from this use of the drift. An ore-shoot was exposed in the roof

and Blanchard concluded to make an up-raise and stope it out. The work plaintiff was sent into the drift to do, and was doing when he was injured, of which he speaks in his complaint, was timbering for the upraise. Under the directions of Blanchard he cleared away the fallen material under the ore-shoot, and set six posts 6 ft. 6 in. high, three on each side lengthwise the drift, on which he placed caps, 9 ft. long, across which lagging would be put, to make it a safe place to work. The best timbers were used, and the best plan of work adopted. In the roof over his head, in the ore-shoot, was a seam or crack, indicating that a slab, with which he was familiar, was liable to fall. He worked about thirty minutes with his pick and drill trying to get it down, but failed, and was satisfied from the examination he made, it was safe. While working, plaintiff said to Blanchard, that he did not think much of the job. Blanchard examined the rock overhead, said he thought it was safe, and to go ahead. Plaintiff did not tell Blanchard about trying to pry it down. When plaintiff was cutting a hitch or shoulder for a spreader between the center posts, and Blanchard was standing by his side, the slab over their heads, which plaintiff had tried to pick down, fell upon them and injured plaintiff severely. We quote from plaintiff's testimony:

"Q.    What kind of work were you starting to do at that particular place; upraise? A.    He (referring to Blanchard) was going to take out that ore. He said there was ore there, and he was going to take it out. Q.    Then you were starting the upraise at that time, and timbering, in order to make it safe to upraise? A. That is what he said. Q.    It was necessary, wasn't it, before you could work permanently in that place, and make the upraise, to put these timbers in to protect the men? A.    Yes. Q.    You would consider it necessary, wouldn't you? A.    Certainly. Q.    Somebody had to

do that work, didn't they? A. Yes, certainly. Q. In order to protect the men before they could go ahead and make their upraise? A. Certainly. Q. And that was the work you were engaged in at that time? A. Yes."

Speaking of the slab that fell upon him, he said:

I tried to pick it down; it wouldn't come; used a pick and drill; spent fifteen or twenty minutes, perhaps thirty minutes, trying to get that slab down; spent probably thirty minutes digging at this slab, digging in there trying to get it down; after I had finally stopped trying to get this slab down, felt that it was up there perfectly safe and securely.

"Q. Now, after you had made that effort, did you, because of this personal examination, conclude that it was safe? A. I thought it was safe there, certainly I did. Q. That was your judgment? A. That was my judgment. Q. What I mean is, was there anything about the appearance of this particular slab that made you think it was dangerous; any slips or seams or cracks or crevices? A. No more than had been in there for a week or two before; there had been a crack in it. Q. You had seen that for a week? A. Yes. Q. You are sure of that? A. Yes sir. Q. So after all your effort in there working for half an hour at it, you couldn't pry it down and you concluded it was safe? A. I thought it was safe; I certainly did."

"Q. I say, both you and Blanchard examined the roof? A. Yes sir. Q. And you concluded that it was safe? A. Yes. Q. And Blanchard told you he thought it was safe? A. Blanchard said it was safe."

Verdict and judgment for plaintiff in the sum of $7500.00. The case is here on appeal.

Mr. CHAS. C. BUTLER for appellant.

Mr. E. G. VANATTA and Mr. JAMES M. BRINSON for appellee.

Mr. JUSTICE GARRIGUES delivered the opinion of the court.

1. Plaintiff was an experienced miner, and timbering was part of his employment. He had worked at the mine about five months and was as familiar with the condition of the drift as Blanchard, the superintendent. Defendant concluded to make an upraise in the drift to stope out the ore, and to make it a reasonably safe place to work, it was necessary to timber. The rule that where one employs another, he must exercise ordinary care to furnish the employe with a reasonably safe place to perform the services, has no application to this case. Plaintiff was engaged in making a dangerous place reasonably safe. Timbering for the upraise was necessary to make a reasonably safe place to work. To require a safe place to work while timbering, before timbering, to make it safe, would mean no timbering. Some one had to assume the risk in the beginning. Plaintiff was under no obligation to timber for the upraise, but if he did, and was injured, without negligence upon the part of the defendant, he assumed the risk, and cannot recover. The trial court should have decided as a matter of law, that plaintiff assumed the risk.—*Poorman Silver Mines v. Devling*, 34 Colo. 37; *City of Greeley v. Foster*, 32 Colo. 293; *Denver Tramway Co. v. Nesbit*, 22 Colo. 408; *Wells v. Coe*, 9 Colo. 159; *Iowa Gold M. Co. v. Diefenthaler*, 32 Colo. 391; *Dickson v. Newhouse*, 34 Colo. 228; *Victor Coal Co. v. Muir*, 20 Colo. 320; *Colo. Coal & Iron C. v. Lamb*, 6 Colo. App. 266; *Stiles v. Richie*, 8 Colo. App. 393; *Harvey v. Mountain Pride G. M. Co.*, 18 Colo. App. 234; *Finlayson v. Utica M. & M. Co.*, 67 Fed. 507; *Walker v. Scott*, 67 Kan. 814; *Christienson v. Rio Grande*, 27 Utah 132; *Naylor v. C. & N. W. Ry. Co.*, 53 Wis. 661; *Morbach v. Home M. Co.*, 53 Kan. 731; *Skidmore v. W. Va. Co.* 41 W. Va. 293; *Hassie v. Peel Co.*, 41 W. Va. 620; *Reed v. Stockmeyer*, 20 C. C. A. 383; *Aldridge v.*

*Furnace Co.*, 78 Mo. 559; *Smith v. Hecla M. Co.*, 38 Wash. 454; *Watson v. Coal Co.*, 52 Mo. App. 368.

2.  Where one, hired to work for another, is injured in an accident, primarily there is no reason why the employer should be liable for the injury. The mere fact that one man gives employment to another is no legal reason why the employer should be liable for an injury received in an accident. We must not lose sight of the universal law of cause and effect. Plaintiff must show that defendant's negligence caused his injury. Negligence, and not employment, is the basis of liability. There is no proof of any negligence in this case, upon which to base a verdict. Plaintiff was not suddenly ordered by a superior into a dangerous place about which he knew nothing, and had no time to examine. He was doing the work for which he was employed, and with which he was familiar. He knew the place, and the purpose for which the work was being done. The best timbers and the most approved method of timbering was adopted. He had not only equal means of knowledge, but equal knowledge with the defendant. He and Blanchard examined the place together and both agreed it was safe. If with his years of mining experience he thought it was safe, it cannot be said that the company was guilty of negligence when the superintendent examined it and coincided with him. It is useless to consider the supposed case; had plaintiff been injured by a rock fall while going through the drift as a passageway to or from his work. Such is not the case.

The complaint does not state the ultimate facts truthfully. It is drawn to get past the court to the jury, and is remarkable in what it fails to state. If plaintiff had truthfully stated the ultimate facts as he proved them on the trial, he would have stated himself out of court. No cause of action, based upon negli-

gence, can be stated on the facts proven. The court should have held as a matter of law, that there was no negligence proved, upon which to base a verdict.

3. Filing a replication instanter was a matter that rested in the sound discretion of the court, and was not abused in this case.

4. Litigants are entitled to have their cases tried to fair minded, impartial jurors. The code provides as a ground of challenge for cause, the existence of a state of mind in the juror evincing bias to either party. The examination of the juror Holmes, showed a state of mind evincing strong bias in favor of one of the parties. It showed that he would require a reversal of the order of proof and place upon the defendant, the burden of disproving the plaintiff's case. The challenge for cause should have been sustained.—*Ancient Order of United Workmen v. Taylor,* 44 Colo. 373.

5. The court instructed the jury:

2. "Where several acts or conditions of things,— one of them the wrongful act or omission of the defendant,—produce the injury, and it would not have been produced but for such wrongful act or omission, such act or omission is the proximate cause of the injury, if the injury be one which might reasonably be anticipated as a natural consequence of the act or omission."

This aptly illustrates an instruction containing correct principles of law, without application to the evidence in the case on trial. It seems to be copied from the syllabus in the case of *City of Denver v. Johnson,* 8 Colo. App. 384, where the question was, whether an act of the city or of the Tramway Company, was the cause of the injury. The principle of law announced in that case is right; embodied in an instruction in this case, it is wrong. In this case the act of some third person or agency is not involved. Instructions should be based upon the evidence, and no instruction should as a rule

be given, which is not relevant to facts which there is some evidence tending to prove. This instruction, applied to the facts in this case, is misleading, and should not have been given.                              *Reversed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE MUSSER concur.