Hurlbut, J.
Action commenced August 19, 1908, by appellee (plaintiff below) against appellant (defendant), to recover for personal injuries. Prom a judgment in favor of plaintiff this appeal is prosecuted. Tlie material allegations of tbe complaint can be briefly stated as follows:
Plaintiff - entered tbe employment of defendant on February 20, 1907, as a miner; be worked under tbe im *127 mediate direction of defendant’s foreman, and on the date of his employment was assigned to work as a miner in one of the stopes of defendant’s mine; while he was working in said stope on the 27th day of February, 1907, a large mass of rock and other substance from the roof of the stope fell upon him and caused the injuries of which he complains; he was thereby damaged in the sum of forty thousand dollars, and suffered special damages to the amount of one thousand dollars spent for services of physicians, surgeons and nurses, and the expenditure of large sums for medicines; that defendant, being unmindful of its duties, permitted its mines, drifts and stopes, to become unsafe, and did carelessly and negligently allow the same to remain in an unsafe condition, and carelessly and negligently failed to equip said mines, drifts and stopes with proper appliances and timbers; that defendant’s foreman knew that large masses of stone and rock in the roof of said stopes had become loosened and unsafe, notwithstanding which he carelessly and negligently allowed the same to remain in said unsafe condition; that said foreman told plaintiff the mine was in a safe condition; that plaintiff did not know of such unsafe condition; that, believing such statement made to him by the foreman, plaintiff entered said mine and proceeded to perform labor therein under his employment; that the injuries were caused wholly by and through the carelessness and negligence of defendant and defendant’s superintendent and were in no wise the result of. any negligence on the part of plaintiff.
Defendant’s answer admits the employment of plaintiff as stated in the complaint, and his continuous service as a miner, from February 20th to February 27th, 1907; denies all allegations of the complaint not specifically admitted, and for an affirmative defense alleges that at all times mentioned in the complaint plaintiff well knew the conditions then existing in and about the mine where the *128 injury occurred, and well knew every risk and danger incident to the conditions in and about said mine and mining properties, and in and about Ms presence at the mine and in the stope, and assumed the risk and danger of the accident and injuries; that the accident and injuries complained of by plaintiff were caused and contributed to by the negligence, fault and omission, and want of care and caution, on the part of plaintiff himself.
Replication put in issue all new matter stated in the answer.
In order to better understand the situation as presented on this appeal, it might be well to briefly state what appear to us to be undisputed or admitted facts in the case, viz:
Plaintiff was a miner of fifteen years’ experience, and was a capable man in any kind of mining work. A day or two before February 20th, the day of his employment, plaintiff had a conversation with Frank Smith, defendant’s foreman, and asked him for a job. He was told in reply to stay around for a day or two and he would give plaintiff a job in a good safe place to work. When Smith employed plaintiff he took him to the station and told Joe Cramer, the shift boss, to put him to work in the big stope, which was from eleven to eighteen feet wide, and from seven and a half to fourteen feet high. Plaintiff was not assigned to work at any particular place in the stope, but used his own discretion in selecting such place. The stope was at least one hundred feet long. The morning of the injury plaintiff was building a crib by which to get up to the ore in the roof, of the stope, and was injured while so employed. Two shifts were working in the stope, plaintiff being on the day shift. The men working on the day shift worked over a distance of about a hundred feet. Plaintiff had been, working at the same place in the stope for about six days, and had, during that time, been blasting, mining, and taking down’rock and *129 ore. During these six days plaintiff had been taking down vein matter in different places, wherever it was handiest to the chute, and had drilled holes and shot them. Other men had done the same. The vein matter was between the hanging ánd foot wall, there was some waste, bnt it was nearly all ore. The night shift did the same kind of work as plaintiff’s shift. The day before the accident plaintiff had been drilling and blasting. More or less ore was taken down out of the vein during the time plaintiff was working in the stope — usually four or five tons to a shift. Plaintiff did not observe the roof at the place where he was working, but had observed other portions of it. The ground appeared to plaintiff to be solid. No one was helping him. When he went to work the morning of the accident he did not make any inspection. The crib was not built directly under the rock which fell. Plaintiff did his own work and paid no attention to what other men of the shift were doing, and did not regard the place where he was working as dangerous, and did not sound the roof the morning he was injured. The roof varied in height. Where the crib was built it was eleven feet high from the floor to the roof. On the morning of the accident plaintiff picked out his own place to work. After plaintiff had worked a week in the stope he concluded the same was safe. He was building the crib from material lying' around the stope, which he hunted up. There were planks enough at the stope to build a platform five or six feet square. Ground which is exposed from time to time is liable to slack, and plaintiff expected to find such conditions when he was mining. It is the common practice among miners, when working under a place, to see if the ground above is liable to remain there while so working. Plaintiff did not, at any time during his employment, complain to the shift boss or the foreman about the stope not being properly timbered. Plaintiff used the material at hand to build the cribbing. There were six, seven or eight *130 planks there at the time. The stope was a filled stope, and the miners working there attended to filling it. The day before the accident no cribbing was necessary to get np to the rock in the roof, as it was only four or five feet from the ore pile on the floor.
Negligence .is the gravamen of this action. The doctrine is well settled in this state that, in actions between employes and employers for personal injuries, no presumption of negligence arises from the happening of an accident. D. & R. G. R. R. Co. v. McComas, 7 Colo. App., 121; Bishop v. Brown, 14 Colo. App., 535; City of Greeley v. Foster, 32 Colo., 292.
The only carelessness and negligence charged against defendant in the complaint is that it allowed and permitted its stopes, etc., to become unsafe, and allowed the same to remain in such condition, and failed to equip the same with proper appliances and timbers in order to prevent the same from being unsafe; that defendant knew rock in the roof of the stope was loose and unsafe and allowed the same to rémain in such condition; that defendant was negligent in not equipping the stopes, etc., with appliances and timbers in order that they might be used to prevent injuries and accidents to employes. In a bill of particulars plaintiff interpreted “appliances,” as used in the complaint, to mean “square sets of timbers, stulls and lagging.”
It is undisputed that the stope was a filled stope, which, as defined by -witnesses, is one where the waste rock taken out of the vein is left on the floor of the stope, thus raising the floor as work proceeds. When there is' insufficient material from the vein matter to raise the floor of the stope as the ore is taken from the roof it is the custom to blast into the adjacent walls to obtain sufficient filling matter, the object being, in practical mining, to keep the floor' of the stope at all times conveniently clósé to the roof, in order that the miner may, while stand *131 ing on the floor, be able to drill holes in the roof and blast ont the material. It is clear then that in such a stope no timbers, stull timbers or lagging, are necessary, or could be used therein, unless it could be said that lagging might be used to construct a crib such as plaintiff was building at the time of his injury, but as to this plaintiff gathered other material with which to build the same from around the stope. The allegations then of negligence on the part of defendant for not keeping on hand near the stope “square sets of timbers, stulls and lagging,” so as to prevent the stopes, etc., from being unsafe, may be eliminated from consideration.
In mining parlance a stope hás a definite, fixed meaning, and every miner of experience knows what is meant when speaking of a stope. It is defined in various ways by lexicographers and text writers; by Morrison as follows :
‘ ‘ The working above or below a level where the mass of the ore body is broken.”
By Webster’s New International Dictionary as follows :
“Any excavation for extraction of ore, as distinguished from a shaft, drift, airway, etc. ’ ’
As the extraction of ore is thé ultimate object of all mining, it is apparent that while miners are working in a stope ore is being constantly removed therefrom, and that by reason .of this the conditions of the stope and locality of their labor therein are constantly changing. A stope is the very antithesis of a shaft, tunnel, drift, winze, or other similar excavation in a mine, which has been finished and completed.
Appellee, with great stress, invokes the well settled rule- in this state that it is the duty of the master to use ordinary care in furnishing and maintaining a reasonably safe place in which the servant is to work. Grant v. Var *132 ney, 21 Colo., 329; Carleton M. & M. Co. v. Ryan, 29 Colo., 401; Roche v. D. & R. G. R. R. Co., 19 Colo. App., 204.
All the authorities, however, recognize one important exception to the rule, namely:
“Where the place of work is not permanent, or has not been previously prepared by the master as a place for the doing of the work, or where the servant is employed to make his own place to work in, and the place is the result of the very work for which the servant is employed, or where the place is inherently dangerous and necessarily changes from time to time as the work progresses, the doctrine contended for has no application. ’ ’ City of Greeley v. Foster, 32 Colo., 292.
In the last cited case plaintiff sought to recover against the city for personal injuries received while working in its ditch as a day laborer. The work was being prosecuted in a tile drain, and plaintiff was ordered by the city’s foreman to go into a portion of the drain, about six feet deep, and assist a fellow workman in putting in cross-braces to prevent a cave-in from the side of the ditch and make it safe. Plaintiff obeyed the instructions and while doing so was injured by the walls caving in. The court held that plaintiff could not recover, and reversed the judgment appealed from. Justice Campbell, in rendering the opinion of the court, spokb as follows:
“Plaintiff, in his testimony, as in his complaint, says that when he got down into the ditch, he was ignorant of the dangerous character of the place, and did not know that the cross-braces had been removed, but it is quite clear from all the evidence that he not only had full opportunity for knowing the situation, but, as a matter of fact, knew as well as anyone connected with the work that there was danger of the bank caving in and injuring those who were working in th'e trench at the time of the accident, and that the cross-braces had been taken out, *133 and, if he did not actually assist in removing them, was present when others did so, and saw them in the very act. But if he did not know these things, it was his own fault; it was because he did not use his eyes. He cannot close his eyes to danger and be heard to say that he was not aware of it. # * * He was not called upon suddenly to go into a place of danger, of which he was, and the foreman was not, ignorant, but he was actually engaged in a work for which he was employed, and which, in the very nature of things, was to his own knowledge obviously dangerous, and which he was doing in order to make safe a place for himself and others to work in. * * * Contributory neigligence was specially pleaded by the defendant. The plaintiff was directed by the foreman who had charge of the work to enter this trench for the purpose of putting in cross-braces to hold in place the sheeting or curbing that was rendered necessary to prevent the caving of the banks. The danger was just as obvious to'plaintiff as to defendant. It was not a case where the danger was known only to the master and not to the servant, nor was it one where, in a case of emergency the servant was suddenly called upon by the master or his representative to do work which was dangerous because of some hidden or latent danger. The plaintiff voluntarily did as he was ordered, and was engaged in doing that which he himself was employed to do, and which he, as well as others, knew was attended with more or less danger, real, apparent, open and obvious, not latent, concealed or hidden; so that, if defendant was chargeable with negligence by reason of the order of its foreman, plaintiff was equally guilty of negligence that directly contributed to the injury, and cannot recover. * * * Cases like Hanley v. Cal. Bridge & Construction Co., 127 Cal., 232, cited by plaintiff in support of the rule that the master is bound to *134 furnish, a reasonably safe place for the servant to work in, are not in point. A careful examination of them shows that the doctrine relates to a place permanent in its character, and where a recovery has been allowed for failure of a master in this respect; it is where the servant has been put into a permanent place that is dangerous, and that place has been prepared by the master himself, or by other workmen: But here, where the plaintiff was making his own place to work in, the rule is clearly inapplicable. '* * * The rule invoked by the plaintiff does not apply when the place at which the work is to be done, and the appliances for the doing of the same, are to be prepared by the servant himself, or where the work and the place of work are coincident. In Faulkmer v. Mammoth M. Co., 23 Utah, 437, the court said:
“ ‘Where the servant is intrusted with the duty of making a place, which is known to be dangerous, safe, or engages in a work the danger of which as he proceeds necessarily changes from time to time, and he is left free to pursue his own course and select his own appliances, he assumes the risk, unless the master has done or neglected to do something that his duty to his servant reasonably requires, which. unnecessarily increases the natural hazard of such changes.’
“These and Other like cases hold that whenever a servant is employed to work in the construction, alteration or repair of any place or thing where the work as it is being prosecuted involves the construction of the place itself, the master fulfills his duty to the servant when he furnishes reasonably safe material and appliances for the performance of the work, and selects competent servants to do it. The risk here was one which plaintiff voluntarily assumed. It was implied in the very terms of his contract of employment.”
*135 This case is clearly a leading one upon this subject, is exhaustively treated by the able writer of the opinion, and many cases are cited from other states and jurisdictions supporting the reasoning therein found.
The Poorman Silver Mines of Colorado, Limited, v. Devling, 34 Colo., 37, is another well considered case upon this subject. Justice Campbell also rendered the opinion in that case. It was an action growing out of personal injuries received. Plaintiff was engaged with a fellow-workman in sinking a winze from the second level down to an upraise being prosecuted from the third level. Two shifts were used in sinking the winze. Plaintiff and his fellow-workman went into the winze after the night shift had quit work. The shift boss, Johns, soon followed them into the winze, and all three discovered a drill hole about six inches in depth in a bench near the bottom, and were uncertain whether it was a “missed hole” or one that the preceding night shift had begun but not finished. Johns got on his knees and examined the hole carefully with a spoon or other appliance, while the other two miners remained looking on. After several minutes Johns arose and said that the hole was one which was drilled and not finished by the night shift, and told the plaintiff that it was safe, and directed him to drill the same deeper. After Johns departed the two miners drilled two other holes in the winze, and then plaintiff started to drill this hole deeper. It proved to be a missed shot,-an explosion occurred, and plaintiff was severely injured. The general rule above mentioned was invoked by the plaintiff, while defendant on appeal insisted upon the application of the exception. Plaintiff recovered judgment,- but the same was reversed and defendant held not liable. The following are some of the excerpts from the opinion of the court:
“The case is one where the master and servant had *136 equal knowledge and means of knowledge of ascertaining the true character of the place of work which was inherently dangerous, and which was the very thing the servant ' was employed to do, and the particular danger encountered was one that not infrequently happens in work of this character. No information was withheld from the plaintiff by the master, nor was he lulled into, a sense of security.
“Intimately connected with if not essentially included in the two foregoing points, but separately argued by counsel, is the contention that plaintiff was protected by his obedience to the foreman’s commands. The discussion of it involves more or less repetition, but as plaintiff confidently relies upon it, we give it separate and further consideration. The general rule is, that the servant’s duty is to obey the orders of his master, and ordinarily he will be excused if he complies therewith. Invoking that doctrine, plaintiff says that when the foreman ordered him to sink the hole deeper, he was bound at the peril of discharge to obey. The doctrine, however, is • wholly inapplicable to the facts of this ease. The mere order to do this work does not, of itself, constitute negligence. The work of drilling was the same in kind as that which the plaintiff under his contract was required to do. * * * He must, therefore, be held to have voluntarily entered upon this particular work which resulted in his injuries with as ample knowledge of its true character as that possessed by his master. It was one of the natural and ordinary risks which he assumed, and if there was any negligence he contributed to it by his own remissness, and, in either case, there can be no recovery, ’ ’ etc.
In this case, as well as the case at bar, plaintiff „ contended that, the foreman having told him the place was safe, and having ordered him to proceed with the *137 work, he was relieved of any further duty to inspect the stope; that he wás entitled to rely upon the statements of the foreman, and that when he proceeded with the work as directed, the company was liable for the injuries, he sustained by reason of the accident which followed, and by reason thereof the exception to the rule is not applicable to him. We think the case's just cited are against such contention. So late as April 11, 1911, the supreme court has reaffirmed the doctrine of the cases heretofore mentioned. Metallic Gold Mining Co. v. Watson, 51 Colo., 278. This was another personal injury case. Plaintiff was sent into a drift to make an upraise and stope out the ore which appeared in the roof thereof, and while so doing was injured. Directly over his head was a slab of rock, which he had tried to remove with a pick and drill but failed. He continued working, and while so doing the slab fell and injured him. Plaintiff recovered judgment, which was reversed, the company being held not liable. The opinion in this case was rendered by Justice Gfarrigues, and is a clear exposition of the exception to the rule we are now considering. The ■court used this language:
“The trial court should have decided as a matter of law that plaintiff assumed the risk.”
The cases cited, as well as many others examined, satisfy us that it is too well settled for discussion that the general rule above stated has no application in a case where the record shows that the injured person was assigned work by his employer in a place where the situation was constantly changing; where the servant was required to make his own place in which to work; where such place was the result of the very work he was employed to do; or where, by the nature and character of the work as 'isued him, he was- constantly changing the physical condition or .status of the ground in which he *138 was working, and thereby from time to time changing the risk; or where the place was inherently dangerous and changing from time to time. The Denver Tramway Co. v. Nesbit, 22 Colo., 408; Faulkner v. Mammoth M. Co., 23 Utah, 437; The Iowa Gold Mining Co. v. Diefenthaler, 32 Colo., 371; Dickson v. Newhouse et al., 34 Colo., 228; Harvey v. The Mountain Pride G. M. Co., 18 Colo. App., 234; The Victor Coal Co. v. Muir, 20 Colo., 320; The Colo. Coal & Iron Co. v. Lamb, 6 Colo. App., 255; Stiles v. Richie et al., 8 Colo. App., 393; Mielks v. C. & N. W. R. Co., 103 Wis., 1; Thurman v. Pittsburg & M. C. Co., (Mont.) 108 Pac., 588; Curley v. Hoff, 62 N. J. L., 758; White’s Mines & Mining Remedies, sec. 398-399; Heald v. Wallace, 109 Tenn., 346; American Law Review, vol. 36, p. 387.
In the case at bar every shot fired in this stope enlarged the excavation, either in the ends or on the roof or sides thereof, and to a certain extent raised the floor of the stope, by reason of the waste rock remaining thereon. The plaintiff, being a practical miner of experience, assumed the risks ordinarily and usually incident to his employment, and will be presumed to have knowledge of the greater or less danger attending the various kinds of work usually required of miners in underground workings or developments of a mine, as well as the circumstances and conditions surrounding the same. It is common knowledge among miners and mine operators that there is no more dangerous or hazardous employment in a metalliferous mine than that of working in a stope, and that danger is ever present therein. We think plaintiff is charged with such knowledge.
The evidence appears to be undisputed that the conversation between plaintiff and Smith, concerning the latter’s promise to give plaintiff a safe place in the mine *139 in which- to work, did take place, bnt what was the legal effect thereof? The conversation was had, presumably, after Smith had left the mine and terminated his day’s employment, and took place at some distance from the mine, in a town in the vicinity thereof. If plaintiff had been assigned to work in this stope immediately upon his employment, without any previous opportunity to examine it, and had begun work therein, and within a few hours thereafter had received the injuries complained of, there might be some force in the contention. The undisputed evidence shows that two shifts of miners had been working in this stope for six or seven days, removing, according to plaintiff’s testimony, four or five tons of ore to the shift, he himself participating in the work during that time, which necessarily created an entire change in the physical condition and situation of the stope from that existing when he went to work. It therefore seems to be unreasonable and illogical to hold that this general statement made by Smith should apply to the plaintiff for all time, and under all circumstances, while he continued in the employment of defendant. Thurman v. Pittsburg & M. C. Co., (Mont.) 108 Pac., 588. The law imposed upon plaintiff the duty of exercising reasonable caution and care at all times, and of adopting such a course in the prosecution of his work as a prudent miner would under similar conditions, having knowledge of the hazardous risk incident to working in the stope. He could not disregard this duty and shut his eyes to the dangers naturally attending the work in which he was engaged, on the theory that Smith’s promise to furnish him with a safe place in which to work relieved him of any duty to exercise reasonable care or caution to avoid injury. The statement made by Smith to plaintiff did not put him in any better position as to liability of defendant for injuries received than if no such state *140 ment had been made. The law under the general rule protects the servant and charges the master with’ an imperative duty to use reasonable care in supplying a reasonably safe place in which his employees are required to work. If plaintiff’s contention be carried to a logical conclusion, then the only way that defendant could protect itself from liability for injuries occurring during the development of a stope would be to make an examination thereof after every shot fired, or advise the miner that he was working in an unsafe place, a fact which the miner must have known as well without as with such advice. Such a requirement would tend to eliminate profitable mining. Plaintiff will be presumed to have known that unusual danger attended him while working in this stope, and he will be presumed to know that high explosives used therein, such as dynamite and giant powder, not only displace rock, ore and other mineral matter adjacent to the shot, but also have a tendency to, and do, loosen other rock and material in the vein in places more or less remote from the point where the shot is fired. Plaintiff verifies this in his testimony by saying that it is usual, after a shot, to pick down and remove all loose material, before resuming work. We think plaintiff assumed this risk and defendant cannot be held liable for the injuries received by him.
Speaking further of the distinction between the rule and the exception, an examination of the cases in the printed reports of this state shows that our appellate courts have repeatedly enforced the general rule as to safe place, in all personal injury cases where the record discloses facts warranting the same; and that where a shaft, tunnel, drift or other similar excavation in a mine, has been driven, finished and completed, and such excavation is used by the employees in passing through the saíne going to and from work, they look with disfavor *141 upon any excuse or defense on the part of the employer which seeks to relieve him from liability for injuries occurring to his employees while passing through the same or working therein, the reason being, presumably, that at all times, by proper care on the part of the mine owner, such places can be made practically safe and secure against such injuries. But where the physical conditions of the underground workings of a mine, such as in a stope, are changing almost hourly while operations are being carried on therein, it would be unjust to apply the general rule without jeopardizing practical mining operations throughout the country.
Appellee seems to rely with great confidence upon the case of Rowden v. Schoenherr-Walton Mining Co., 117 S. W., 695. Upon careful reading of that case we think it can be readily distinguished from the case at bar and those decisions of our own supreme court to which we have heretofore referred. The facts in the Roivden case and the case at bar are quite dissimilar. In the former the plaintiff’s employment was simply to drill holes with a drilling machine and load and fire them in a drift, while the timbering, if any, and removing of material, was done by other employees of the company. A sharp issue of fact in that case was, whether or not it was the rule and custom of defendant to. send into the drift, after shots were fired, other employees besides plaintiff and his helper, to trim the drift and make it safe before the return of the machine men to work. The court held that it was proper to submit such question to the jury. There is no such issue in the instant case. We have examined the large number of other cases cited by appellee, and believe they can all be distinguished, both as to law and facts, from those of our own state as well as those of other jurisdictions heretofore cited.
As we read this record there appears to us to be an *142 entire lack of evidence showing negligence on the part of appellant company. The trial court should have given to the jury Instruction No. A, tendered by defendant, which commanded the jury to return a verdict in favor of defendant. We also think that Instruction No.- 5, given by the court, was prejudicial error and did not correctly state the law concerning the rule and exception which we have been discussing. It reads as follows:
‘ ‘ The court instructs the jury:
That greater diligence should not be exacted of the plaintiff than common prudence required him to exercise considering the circumstances under which the work was carried on; he had a right to assume in the absence of knowledge, or reasonable opportunity of acquiring knowledge to the contrary, that the place furnished him by the defendant where he was required to perform his work.was reasonably safe, and if there were latent defects of which he had no knowledge, or which were not obvious to him while.using ordinary care and observation, then he did not assume the risk attendant thereon, and if the jury find from the evidence in this case that at the time the plaintiff entered into the employ or service of the defendant, he was told by defendant’s agent in charge of the mines where the alleged injury occurred, that the defendant would furnish him a safe place in which to work, then the plaintiff had a right to rely upon such statement, if you find it was so made, and assume that the place where he was directed to work was a reasonably safe place, and that if he exercised ordinary care, caution and observation, he did not assume any risk other than was incident to the work which he was employed to do.”
The court also erred in refusing to give appellant’s Instruction No. 0, offered by it. The evidence clearly called for this instruction. No other instruction of sim *143 ilar import was given by tbe court. This instruction was as follows:
“The jury are instructed that the defendant was not an insurer of the safety of the plaintiff. The general rule is that the master is required to use ordinary care to furnish the servant a reasonably safe place in which to work, but such rule does not apply where the place of work is not permanent, or has not been previously prepared by the master as a place for the doing of the work, or where the servant is employed to make his own place to work in and the place is the result of the very work for which the servant is employed, or where the place is inherently dangerous and necessarily' changes from time to time as the work progresses. In such case the servant assumes the risk of the condition of the place in which he works.”
There are other assigned errors discussed by counsel in their briefs, but in view of the conclusions we have reached it will be unnecessary to consider them.
For the reasons given, the judgment will be reversed. Reversed and Remanded.